McRae *et al. v.* Robinson.*

(Division A.   Nov. 29, 1926.)

[110 So. 504.   No. 25779.]

1. HUSBAND AND WIFE. *Husband, suing wife's parent for alienation of affection must show that parent, in doing acts resulting in abandonment, was actuated by malice.*

   Husband, in suing wife's parent for alienation of affection, must show, not only that defendant has actually done acts charged and that they have resulted in abandonment by wife, but must also show that parent in doing so was actuated by malice.

2. HUSBAND AND WIFE. *Husband suing wife's parent for alienation of affection must overcome presumption that parent acted for child's best interest.*

   Presumption, in suit by husband against wife's parent for alienation of affection, is that parent acted for best interest of child, and husband has burden of showing that parent was prompted by malice.

3. Husband and Wife. *Instruction, in husband's suit against wife's parent for alienation of affection, warranting finding of malice if actions were wrongful and without reasonable cause, should have required intentional wrong.*

Instruction, in husband's suit against wife's parent for alienation of affection, warranting finding that parent acted maliciously if action was wrongful and without reasonable cause, should have been qualified to extent of stating that act or acts complained of were intentionally wrong.

4. Husband and Wife. *Instruction, in husband's suit for alienation of affection, held erroneous, as applied to wife's parent, as authorizing recovery for wrongful acts, regardless of motive.*

Instruction, in husband's suit for alienation of affection, authorizing recovery on finding that defendants wrongfully caused wife to be taken from him and to lose her affection, *held* erroneous, as applied to wife's parents as authorizing recovery dependent on mere wrongfulness of acts, regardless of motives prompting them.

5. Husband and Wife. *Instruction authorizing recovery by husband for alienation of wife's affections, without requiring finding that facts were malicious, held erroneous as applied to wife's parent.*

Instruction, in husband's suit for alienation of affection, authorizing recovery on finding that wife's affections were alienated because of act or persuasion of defendant, *held* erroneous, as applied to wife's parent, as authorizing recovery on mere fact of alienation of affections, without reference to whether acts were malicious or prompted by proper motives.

6. Husband and Wife. *Instruction authorizing husband's recovery on finding that actions or words of defendants caused wife's affections to be alienated held erroneous as applied to wife's parent.*

Instruction, in husband's suit for alienation of affection, authorizing recovery on finding that defendants did any act or said any word to plaintiff's wife for purpose of separating them and alienating her affections, if such act or word caused alienation or contributed thereto, *held* erroneous as applied to wife's parent.

7. Evidence. *Testimony as to what his wife told witness relative to long distance telephone conversation with her sister held inadmissible as hearsay.*

In husband's suit for alienation of wife's affections, his testimony relative to what his wife had told him of long distance telephone conversation with her sister, in regard to proposed activities

of herself and her mother in securing wife's return home, *held* inadmissible as hearsay.

8. Husband and Wife. *Instruction, in husband's suit for alienation of affections, that parent had right and duty to counsel and advise child held properly refused.*

   Instruction, in husband's suit for alienation of wife's affections, requested on behalf of defendant parent relative to parent's right and duty to counsel and advise child, even after marriage, *held* properly refused as misleading.

9. Husband and Wife. *Wife's letters to husband before marriage held admissible, in husband's suit for alienation of affections.*

   Letters written by wife to husband before marriage *held* properly admitted, in husband's suit for alienation of wife's affections, as tending to show state of mind of wife and her affection for husband prior to marriage and separations.

---

*Corpus Juris-Cyc. References: Evidence, 22CJ, p. 199, n. 36; Husband and Wife, 30CJ, p. 1122, n. 41; p. 1229, n. 41; p. 1135, n. 26; p. 1136, n. 38, 46; p. 1143, n. 24; p. 1147, n. 87, 89, 89 New; p. 1148, n. 96. On liability of parent for causing separation of husband and wife, see annotation in 9 L. R. A. (N. S.) 324; 46 L. R. A. (N. S.) 469; 13 R. C. L. 1471; 3 R. C. L. Supp. 150.

Appeal from circuit court of Jones county.

Hon. R. S. Hall, Judge.

Suit by Rayburn Robinson against David F. McRae, Mrs. Daisy Keeton, Earl Keeton, and others. From a judgment for plaintiff against defendants named, and in favor of other defendants, defendants named appeal, and plaintiff cross-appeals. Affirmed on the cross-appeal, and on direct appeal reversed and judgment rendered in part, and in part reversed and remanded.

*Shannon & Schauber* and *Welch & Cooper,* for appellant.

The court erred in refusing appellant, Mrs. Keeton, the following instruction: "The court instructs the jury for Mrs. Daisy Keeton that she as the mother of Eloise Keeton had the right and was under the duty to care for, watch over, counsel and advise her whenever

the necessities of the child's situation required or jus-
tified such care, watchfulness, counsel and advice. And
the court tells you that this right and this duty do not
end when the child marries or becomes of age but con-
tinues through life.''

It was contended that this child was eighteen; that she
had a right under the law to marry; that she exercised
this right; and Mrs. Keeton, her mother, without reason
sought out this girl and advised her. In fact, appellee
received an instruction to the effect that malice was the
doing of a thing wrongfully and without reasonable ex-
cuse. Why should this mother proceed to the side of
her daughter and look after her? Did she have a rea-
sonable excuse? No, it was contended, because the girl
was eighteen and had the right to marry, and did marry,
and there her rights and duties ended. We had the
right to have the jury told that the rights and duties of
this mother did not end with the marriage of her daugh-
ter. As to the correctness of this instruction as a mat-
ter of law, see *Tucker* v. *Tucker,* 19 So. 955, 74 Miss. 93;
also, *Jones* v. *Monson,* 137 Wis. 478, 119 S. W. 179, 48.

The court erred in giving appellee the instruction
found on page 274. Mrs. Keeton had a perfect right to
counsel her daughter. She had the right to advise her
daughter, provided her motive was not one of malice.
*Tucker* v. *Tucker,* 74 Miss. 93, 19 So. 955, expressly holds
this. Yet this instruction tells the jury that if any act
was done, or any word said, for the purpose of separat-
ing appellee and his wife and alienating her affections,
then ''he or she'' is liable to plaintiff.

Another instruction tells the jury that appellants may
be deemed to have acted ''maliciously,'' if they acted
wrongfully and without reasonable excuse.

Again, an instruction says the same thing and says
further ''that anger, malevolence or vindictiveness is
not necessarily the meaning of anger.''

It is very true that in many actions where malice is
an element the definition is given that a wrongful act

without a just or legal excuse indicates malice.   But here we have a case where a mother is involved and the safety and future, as she conceived it, of her daughter.   To say that a mother who is devoted to her daughter acts with malice, when a man of whom she knows nothing and of whom she has never heard marries her daughter and takes her away, simply because she follows them, we think is not the malice the law requires.  *Brown* v. *Brown,* 124 N. C. 19, 32 S. E. 320.

The greatest authority on malice in cases of this character is found in the opinion of Chancellor Kent, in *Hutcheson* v. *Peck,* 5 Johns 196.   There it is clearly shown that ''malice'' as used by the court meant an improper motive as opposed to a proper motive.   That is the malice the law requires and not the malice which the questioned instructions set out.

An act of a parent might be wrongful.  Looking back, on it, there may be no reasonable excuse.  Yet, the parent might be moved by the highest motive, the welfare and happiness of her child.   That being true, the parents conduct is not characterized by malice.  Yet a wrongful act without excuse has been done.  This instruction takes the very heart out of ''malice'' as the Tucker case indicates and as is held in *Jones* v. *Monson,* 137 Wis. 478, 119 N. W. 179; *Beisel* v. *Gerlach,* 221 Pa. 232, 70 Atl. 721; *Warren* v. *Graham,* 156 N. W. (Iowa), 323.

Other instructions omit the word ''maliciously.''   If the act in their opinion was wrongful, regardless of the motives, a verdict was authorized.  In *Barton* v. *Barton,* 119 Mo. App. 507, 94 S. W. 574, it is held that where a mother and sister are jointly sued, that the sister may avoid herself of anything the mother had as a defense. The appellants here are mother, brother and brother-in-law of the wife of appellee.  *Miller* v. *Miller,* 154 Ia. 344, 134 N. W. 1058.

We assign as error the admission of the letters written by the wife of the appellee prior to this marriage. The letters were all written before the marriage.  In

*Erickson* v. *Erickson,* 98 Kan. 244, 158 Pac. 48, that court held that letters written prior to a marriage were not admissible.

Mrs. Keeton did not know that appellee was living. She knew nothing about this love affair. She knew nothing about these letters. The wife of appellee is thus allowed to testify through her letters. When the wife was offered, appellee objected. We say that these letters were incompetent and their contents damaging to Mrs. Keeton, an appellant.

Judge Smith in his concurring opinion in *Sivley* v. *Sivley,* 51 So. 457, 96 Miss. 137, held that the statements of the alienated spouse were not admissible.

Finally, we submit that the evidence does not show that Mrs. Keeton maliciously alienated the affections of appellee's wife, though she caused the separation. What motive could she have? None other than the interest of her child, the safety and happiness of the child. Was it malicious of this mother to follow her child? This court will not say it was because it knows that ninety-nine per cent of the mothers in the state would have done the same thing. *Multer* v. *Knibbs,* 193 Mass. 556, 79 N. E. 762; *Brown* v. *Brown,* 124 N. C. 19, 32 S. E. 320; *Bourin* v. *Bourin,* 185 Pac. 489; *White* v. *Ross,* 47 Mich. 172, 70 N. W. 188; *Hossfred* v. *Hossfred,* 188 Fed. 61. These cases establish the proposition that there is a presumption of both law and fact that the parent acted with proper motives. This presumption is positive and must be overcome. See, also, *Oakman* v. *Belden,* 94 Me. 280, 47 Atl. 553.

*F. E. Collins, Jeff Collins,* and *H. E. J. Ross,* for appellee.

Counsel complain about the refusal of the court to grant David McRae the instruction sought. This, in our opinion, needs no comment from us further than to say that the very first sentence is not the law, and the whole

instruction is not based upon the testimony in this case. It is wrong all over.

Counsel complain of an instruction which the court refused to give for Mrs. Daisy Keeton. This instruction may be correct as an abstract principle of law, but the error in that instruction is that it is not applicable to the case at bar. This case goes further than showing mere advice given to Eloise, for plaintiff has shown by the testimony that not advice was given, but actual force was used. In the Tucker case referred to, the gist of the action was based on the advice the father gave his son after the separation, which separation was not shown to have been caused by the father at all, and so the point in the case was, What motive did the father have? If he had the wrong motive, then he was liable even for giving such advice; if he had the right motive, he had a right to advise his son. So, we say, the instruction is not pertinent to the issue here involved.

Furthermore, on the question of the requirements of the proof as to malice and to answer argument of counsel to the effect that the instructions were wrong as to the definition of actionable malice, we quote *Brown* v. *Brown*, 124 N. C. 19.

Counsel complains that appellant was allowed to testify that the conversation he heard while at Chattanooga and while in jail between his wife and some one at Laurel over the telephone was said by his wife to have been Ouida Keeton. We think the fact was sufficiently established that by the admissions of Ouida Keeton and her mother, Mrs. Daisy Keeton, who say that a conversation was had over the phone at the time and they both were present. It is true Mrs. Keeton says she did the talking. But it will be noted that this all took place in the presence of the appellee and before the separation. The question was asked appellee if he overheard the conversation and he said he did. The concurring opinion of Judge Smith in the Sivley case shows that the statements there proved were made after the husband's af-

fections were alienated, and were made with reference to and in explanation as to why his affections had been alienated. This statement tended to show that even at that stage of the proceedings the wife was unwilling, or protested to him that she was unwilling to leave him.

In concluding our argument, we want to call the court's attention to *Hennessey* v. *Wahlig et al* (La.), 99 So. 405, which is almost on all fours with the case at bar.

Argued orally by *Ellis B. Cooper,* for appellants, and *Jeff Collins* and *H. E. J. Ross,* for appellee.

Cook, J., delivered the opinion of the court.

The appellee, Rayburn Robinson, instituted this suit in the circuit court of the Second district of Jones county against Mrs. Daisy Keeton, her son, Earl Keeton, her single daughter, Ouida Keeton, her married daughter, Mrs. Maud McRae, her son-in-law, David F. McRae, and W. M. Carter, Miss Ouida Keeton's employer. The declaration was in two counts; the first count being for the alienation of the affections of appellee's wife, who was a minor daughter of Mrs. Daisy Keeton, and the second count being for false arrest. In each of these counts, it is charged that all the defendants conspired together, first, to alienate the affections of appellee's wife; and, second, to procure his arrest falsely.

Briefly stated, the record discloses the following facts:

On September 28, 1925, the appellee met Eloise Keeton, the eighteen year-old daughter of the appellant Mrs. Daisy Keeton, a widow, and induced her to marry him. Eloise had met the appellee at a street show some two years before that time, and thereafter, without the knowledge of her mother, had carried on a courtship with him. The appellee never visited Mrs. Keeton's home, and was unknown to her. During this courtship many letters passed between the appellee and Eloise, but these letters were not mailed to her direct, but were sent under cover to school girl friends, who delivered them.

The marriage ceremony was performed at Ellisville, Miss., and the couple shortly thereafter left for Chicago *via* Birmingham and Chattanooga. Mrs. Keeton learned of the marriage some time in the forenoon of the same day, and started an investigation at once to learn the facts, particularly to ascertain to whom her daughter was married. She first communicated the information she had received of her daughter's marriage to another daughter, Ouida Keeton, who was employed as stenographer and bookkeeper for the defendant W. M. Carter. Miss Ouida Keeton immediately telephoned to officers and the license clerks of surrounding counties, seeking information in regard to the runaway couple, and also requested her employer, W. M. Carter, to go to Ellisville and make inquiry in regard thereto. Mr. Carter immediately drove to Ellisville, and examined the marriage records. Upon discovering that these parties were already married, he returned to Laurel.

Upon receiving information of the elopement, Mrs. Keeton had her son Earl Keeton, one of the defendants, drive her to the sheriff's office, and, accompanied by the sheriff of the county, they drove to Ellisville for the purpose of making an investigation. There they interviewed the officers, including the justice of the peace who performed the marriage ceremony, and there learned that Eloise was married to the appellee. Later in the day, Mrs. Keeton learned that they had purchased a ticket and boarded a train for Chicago. In the late afternoon, after he had finished his work for the day, David F. McRae, a son-in-law of Mrs. Keeton, went to her house to inquire in regard to the marriage, and, at the request of Mrs. Keeton, he then drove her to the office of the chief of police of the city of Laurel. There an interview occurred between Mrs. Keeton and the chief of police, in which it was decided to send a telegram to Birmingham for the purpose of intercepting the couple at that point. David McRae took no part in this conference until they were ready to prepare this telegram, when he was called

upon by the chief of police to write the telegram. This he did under the directions of the chief of police, supplying some of the points of description of the girl involved. This telegram was directed to the chief of police of Birmingham, Ala., and requested a search of an A. S. G. train for the appellee and the young lady, gave a description of the parties, and stated that the appellee was "charged with perjury and married girl under age. Bought tickets Ellisville for Chicago." David McRae then accompanied Mrs. Keeton to the telegraph office, where the telegram delivered for transmission.

Upon learning later in the evening that the couple had not been intercepted at Birmingham, Mrs. Keeton directed that the same telegram be forwarded to Chattanooga, Tenn., and about 11:30 that night she was notified that the couple had been intercepted and detained at Chattanooga. She left on the first train for Chattanooga and arrived there during the following day. When the runaway couple reached Chattanooga, they were taken from the train by the officers, and carried to the police station, where they were kept under surveillance until the arrival of Mrs. Keeton. Upon the arrival of Mrs. Keeton at the police station in Chattanooga, there ensued a rather stormy interview between these parties, the details of which are unnecessary to be here stated, but which resulted in Eloise informing her husband that she was going to return to Laurel with her mother. After Mrs. Keeton and Eloise had departed for Laurel, the appellee was released from custody, and proceeded to Chicago. Two or three days later he returned to Laurel and sought an interview with his wife. He was unsuccessful in this, and thereupon he instituted *habeas corpus* proceedings for possession of his wife. The record is silent as to the result of this proceeding, but it is shown that, at this hearing, the appellee and his counsel had a private interview with the then Mrs. Robinson, and on October 6th, or the eighth day after the marriage, the appellee filed this suit, which resulted in a verdict for nine thou-

sand five hundred dollars against Mrs. Keeton, her son Earl Keeton, and her son-in-law, David F. McRae, from which judgment this appeal is prosecuted. The court below granted a peremptory instruction in favor of all the defendants, on the second count of the declaration, which was based upon an alleged false arrest, and there is no appeal from this action of the court. A peremptory instruction to find for the defendants Mrs. Maud McRae, Miss Ouida Keeton, and W. M. Carter, on both counts, was granted. The appellee concedes the correctness of this instruction as to Mrs. Maud McRae, but has prosecuted a cross-appeal as to Miss Ouida Keeton and W. M. Carter.

Conceding that this cross-appeal has been properly taken, and that the question is properly before us for decision, we think the action of the court below in granting a general peremptory charge in favor of Miss Ouida Keeton and W. M. Carter is manifestly correct. As to W. M. Carter, there is no testimony which even suggests his participation in the alleged conspiracy, and while conceding that Miss Ouida Keeton manifested a sisterly interest in the welfare of her younger sister, we do not think there is any testimony which would warrant the inference that she was in any way a party to a conspiracy to alienate the affections of her sister for her husband, the appellee.

On the direct appeal, Earl Keeton and David McRae assign as error the refusal of the court to grant a general peremptory instruction in their favor, and we think the refusal of those instructions was error. Without here detailing the testimony upon which liability is claimed against these two defendants, but after a careful and repeated consideration of each item thereof, including the fact that on the day following the marriage and the arrest and detention of these parties in Chattanooga, and while Mrs. Keeton was in Chattanooga, Earl Keeton made an affidavit against the appellee, attempt-

ing to charge him with perjury, we think these instructions should have been granted.

There remains to be considered the assignments of error applicable to the liability of Mrs. Keeton, and, in her behalf, it is strongly urged that the testimony fails to show that she did anything to alienate the affections of the appellee's wife, and that the peremptory instruction requested by her should have been granted. With this contention, we cannot agree. Under all the testimony, it was a question for the jury to say, under proper instructions, whether Mrs. Keeton's words, acts, and conduct, resulted in the alienation of her daughter's affection for her husband, and, if so, whether, in so doing, she was actuated by malice, or by a proper parental regard for the welfare and happiness of her daughter, and this brings us to a consideration of the action of the court in granting and refusing instructions.

In a suit of this kind, brought by the husband against a parent of his wife, upon allegations that the defendant has enticed the plaintiff's wife away from him, and alienated her affection for him, it is not enough to show that the defendant has actually done the acts charged and that they have resulted in an abandonment of the plaintiff by his wife, but a material element is the intent or purpose that controlled the parent's action. This court has held that:

"The question always must be, was the father moved by malice, or was he moved by proper parental motives for the welfare and happiness of his child?" *Tucker* v. *Tucker,* 74 Miss. 93, 19 So. 955, 32 L. R. A. 623.

The presumption in all such cases is that the parent has acted only for the best interest of the child, and the burden is upon the plaintiff to overcome this presumption and to show that the defendant had been prompted by malice in what was said and done.

In recognition of this principle, the appellee requested and was granted two instructions defining the malice necessary to sustain the action, in the following language:

"(1)  The court instructs the jury, for the plaintiff, that it is not necessary for you to believe that the defendants were angry at the plaintiff before you will be warranted in finding that they acted maliciously, but, if you believe that the defendants acted wrongfully and without a reasonable excuse, then you will be warranted in finding that they acted maliciously.

"(2)  You are further instructed that the term 'malice,' as used in the instructions in this case, does not necessarily mean anger, or a malevolent or vindictive feeling toward plaintiff, but a wrongful act without a reasonable excuse is malicious within the legal meaning of the term."

We think these instructions should have carried the further qualification that the act or acts complained of were intentionally wrongful. The act of a parent which results in the alienation of the affections of a child may be wrongful, and, when viewed in the light of after developments, without a reasonable excuse, but, unless the act was intentionally wrong, it would not constitute such malice as would support an action for such alienation of affections.  We do not hold, however, that we would necessarily reverse the case for the errors in those two instructions alone, especially in view of the fact that Mrs. Keeton secured an instruction telling the jury that, although they might believe that she brought about the separation of plaintiff and his wife, still they must find for the defendant Mrs. Keeton if they believed she acted from the proper motive of a mother in caring for the welfare and happiness of her child.

The appellee also secured the two following instructions, the granting of which is assigned as error:

"(9)  The court instructs the jury for the plaintiff that, if you believe from the evidence in this case that the defendants wrongfully caused plaintiff's wife to be taken from him and by words and acts caused her to lose her affection for him and to refuse to live with him, then it is your sworn duty to find for the plaintiff.

"(11)    The court instructs the jury for the plaintiff that, if you believe from a preponderance of the evidence and surrounding circumstances, as shown by the evidence in this case, that the plaintiff's wife's affections for him were alienated because of the acts or persuasions of the defendants, then it is your sworn duty to find for the plaintiff."

These instructions are manifestly erroneous, and are in conflict with instructions granted to the defendants. The first of these instructions makes the defendant's liability depend upon the mere wrongfulness of their acts, regardless of the motives prompting them. The question to be solved by the jury is, Was the parent moved by malicious motives, or by proper parental motives for the happiness and welfare of the child? If the parent is actuated by proper and reasonable parental regard for the happiness and welfare of the child, mere wrongfulness of his or her acts, from the standpoint of good judgment as to the wisest and best course to be taken, will not authorize the recovery of damages against the parent. As said by this court in the case of *Tucker* v. *Tucker, supra*:

"In his advice, and in his action, he may have erred as to the wisest and best course to be taken in dealing with a question so delicate and so difficult, but he is entitled, in every case, to have twelve men pass upon the integrity of his intentions,"—and, if his motives are found to be based upon a proper parental regard, he is not liable in damages, although, in the light of after developments, his action may appear to have been wrongful. *Tucker* v. *Tucker,* 74 Miss. 93, 19 So. 955, 32 L. R. A. 623; *Jones* v. *Monson,* 137 Wis. 478, 119 N. W. 179, 129 Am. St. Rep. 1082; *Beisel* v. *Gerlach,* 221 Pa. 232, 70 A. 721, 18 L. R. A. (N. S.) 516; *Multer* v. *Knibbs,* 193 Mass. 556, 79 N. E. 762, 9 L. R. A. (N. S.) 322, 9 Ann. Cas. 958; *Oakman* v. *Belden,* 94 Me. 280, 47 A. 553, 80 Am. St. Rep. 396.

The error in the next instruction numbered 11 is even more glaring. In this instruction liability is made to depend upon the mere fact of the alienation of the wife's affections, by the acts or persuasions of the defendants, without reference to whether such acts were malicious, or were prompted by proper motives, or were reasonably justified under the facts and circumstances in evidence. This instruction is in conflict with other instructions, and it swept away practically every vestige of appellant's defense, and we think the granting of this instruction alone was reversible error.

By instruction No. 3, granted the appellee, the jury were told that:

If they "believe from the evidence that any one of the defendants did any act or said any word to plaintiff's wife, for the purpose of separating them and alienating her affections from plaintiff, then he or she is liable to plaintiff, provided you further believe that such act or word, if any, caused plaintiff's wife's affections to be alienated or contributed thereto."

This instruction is also erroneous, for the same reasons assigned in reference to the instruction last above discussed. It makes the fact of alienation of the affections of the wife controlling, without reference to the motives which may have prompted the act or word, which may have contributed to the alienation.

The appellee testified that his wife had a conversation with some one over long distance telephone shortly after they were detained in Chattanooga, and, over the objection of the appellants, he was permitted to testify that his wife told him that this conversation was with her sister, and he was also permitted to detail what his wife said she had told her sister in regard to any proposed activities of herself and her mother in regard to the matter. This was hearsay, and we think it should have been excluded.

The appellant assigns as error the refusal of the following instructions:

"The court instructs the jury, for Mrs. Daisy Keeton, that she, as the mother of Eloise Keeton, had the right and was under the duty to care for, watch over, counsel, and advise her whenever the necessities of the child's situation required, or justified such care, watchfulness, counsel, and advice. And the court tells you that this right and this duty do not end when the child marries, or becomes of age, but continues through life."

This instruction is copied almost literally from the body of the opinion of this court in the case of *Tucker* v. *Tucker, supra,* and, as an abstract statement of the right and duty of a parent to counsel and advise a child, is correct, but, as embodied in this instruction to the jury, we think it was properly refused. Without further qualifications, it was calculated to mislead the jury, and cause the fact of parentage to be magnified beyond its legitimate scope as a justification for the acts or conduct of the defendants.

Numerous letters written to the appellee by his wife before the marriage were admitted in evidence over the objection of the appellants. We think these letters were admissible as tending to show the state of mind of the wife and her affection for her husband, at the time of, and prior to, the marriage and separation.

On the cross-appeal, the judgment of the court below will be affirmed. On the direct appeal, the judgment will be reversed as to all the defendants, and judgment will be entered here in favor of the defendants Earl Keeton and David F. McRae, while, as to the defendant Mrs. Daisy Keeton the cause will be remanded to the court below.

*Affirmed on cross-appeal, and reversed on direct appeal.*