STONE *v.* BANG.*

(Division B.    May 6, 1929.)

[122 So. 95.    No. 27840.]

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2952, p. 969, n. 56; Seduction, 35Cyc, p. 1304, n. 69; p. 1311, n. 37; p. 1322, n. 61; p. 1325, n. 92. Mental anguish as element of damages in cases of seduction, see annotation in 33 L. R. A. (N. S.) 99; 24 R. C. L. 756.

*Mize, Mize & Thompson,* for appellant.

*Bullard & Bullard,* for appellee.

ANDERSON, J. Appellee brought this action in the circuit court of Jackson county against the appellant, under section 720, Code of 1906 (section 514, Hemingway's 1927 Code), to recover damages for the alleged seduction by appellant of appellee's minor daughter, Lillie. There was a trial, resulting in a verdict and judgment in appellee's favor for the sum of two thousand dollars, from which judgment appellant prosecutes this appeal.

The statute upon which the action is based, above referred to, is in this language: "A father or mother may bring an action for the seduction of a daughter, although such daughter be not living with nor in the service of the plaintiff, and though there be no loss of service, but a recovery by the father, mother, or daughter shall bar any other action for the same cause."

There was no substantial conflict in the material evidence. The appellant was a Holiness preacher and had a wife and several children. He conducted religious services at Hollywood church in Jackson county, and was

the leader of the choir. Appellee's daughter, Lillie, was a child between sixteen and seventeen years of age. She testified, and her evidence was uncontradicted, that one night at church appellant told her he was going away, and wanted her to leave with him, and requested her not to tell anybody of his wish; that his wife did not love him and neither did his children; that he loved her (Lillie); that God had said if a man had a desire in his heart, He would gratify it, and that God would forgive her if she went away with him, and that her father and mother would also forgive her; that the Bible justified such a thing; and that later, on another night at church, the appellant asked her if she was going to leave with him, to which she replied that she did not know, and appellant said then that he loved her and wanted her to go with him, and assured her that she would have a better time with him than at home; that he promised her everything she wanted; that he would buy her all sorts of things, all the clothes she wanted and a car, and after everything had settled down, he would get a tent and go to preaching; that he wrote her a letter and asked her to burn it, in which he told her he prayed to God to let him have her; that he loved her and wanted her, and would care for her and buy her what she wanted; that he had plenty of money; that she burned the letter because he told her to do so; that every time she went to church he would importune her to go with him; that she received a second letter from him which he told her to read and burn, with which request she complied; that in this second letter he told her that he had five hundred dollars in money and promised her a car and clothes and a good time, and stated that she would be better off than at home, and later, on returning from the post office, appellant stopped her and asked her if she was going with him; appellant was in a car by himself and induced her to get in with him; that he drove further and stopped, and hugged and kissed her; that she objected to this and

tried to make him quit; that he told her how much he loved her, and that he was going to leave next Saturday and go to Mobile, and that he would meet her next Wednesday morning near her house before daylight; that to this meeting she agreed; that he according came about five o'clock in the morning, that she went to him, got in the car with him, and he took her to Mobile; that there, as a result of persuasion, she submitted to sexual intercourse; that later on they went to New Orleans and continued their relations; and that he assured her all the time it was all right, and that God would forgive them.

Appellant did not testify. The only evidence he offered was that of one Rouse, who testified that, shortly before the alleged seduction, he saw appellee's daughter. Lillie, and a young man together, between sundown and dark, near a barn in the old shipyard.

At the request of the appellee, the court instructed the jury that they were authorized, in assessing damages, to consider, as an element, appellee's humiliation and wounded feelings caused by the seduction of his daughter. The giving of that instruction is assigned and argued as error by the appellant. The appellant takes the position that wounded feelings and humiliation—mental anguish—are not elements of damages in a case of this kind; that the appellee was only entitled to recover damages for the loss of the services of his daughter. It is true that the old common-law rule was that the gravamen of an action by a parent for the seduction of a daughter was the loss of services of the daughter, but the courts, beginning back many years, departed from that rule. Under the old common-law rule, the child was looked upon alone as, the servant of the parent. But, with the advancement of education and civilization, it was found that the relationship of a parent and child embraced a much larger and more enlightened view. A father is bound to maintain and educate his daughter, and to train her morally, so as to properly prepare her

for the duties and responsibilities of life. If the whole scheme of life is broken up by the stain of dishonor put upon the daughter by her seducer, there is an unlawful interference with the relationship of father and daughter.

In *Ellington* v. *Ellington*, 47 Miss. 329, the court, in discussing this question, said, among other things: "A perusal of the books shows how difficult it is for the judicial mind to emancipate itself from forms sanctioned by age and long experience. But courts cannot stand still, and observe society in the march of improvement toward higher development of morals, and a more refined appreciation of its varied relations. Jurisprudence must expand its principles, and their applications, so as to keep in harmony with the necessities of advancing society. The idea that this action rests upon the relation of master and servant, originated in a ruder civilization than ours. The true relation to parent and child, is that of protection, nurture and education, on the one side, and dependence, filial affection and obedience on the other. The ties of nature are generally sufficient to enforce these duties. Control over the child, so as to dispose of its time, and labor and person, is necessary in order that the parent may so train and guide his offspring, as that it may be a virtuous and (according ' circumstances) a useful and intelligent member of society. The family is the oldest institution among men; out of the aggregation of these lesser communities, the state and the nation is made up; whatever tarnishes the purity and honor of the female members, whilst entailing disgrace and suffering upon the family, also in its effects is a public wrong. That system of jurisprudence which punishes in damages the slightest aggression upon property, but denies redress to the father, and if he be dead, to the mother, for the defilement of an infant daughter (except upon the predicate of a loss of services), is at variance with the sentiments and conscience of this age. So clamorously has the injury inflicted upon

the parental feeling, and the disgrace attaching to the female, and reflected from her upon the family, pressed upon the judicial mind, as the substantial injury to be redressed, that the courts have, in case after case, so frittered away the technical gravamen of the action, that but little more now remains except the barren form. The remark of an eminent judge is true, 'that this relation of master and servant is but a figment of the law to open the door for the redress of the real injury;' 'the parent comes into court as a master, he goes before the jury as a father.' In the best considered cases, those at least that receive our assent, this is the principle: For the seduction and defilement of a minor daughter, the parent may recover for the wrong, because it is his right and duty to protect the person and the morals of his child, and so long as disability of non-age continues, he has, *de jure*, the authority to control its person and conduct, its society and services; that the abnegation of this authority and right is not to be presumed, unless there has been some decisive act done, or contract made, by which the parent, in such form as is obligatory, absolves the child from dependence upon him, and places her under the control and disposition of another; and while this condition of things continues, he may maintain the action, although the injury be done whilst the infant was an apprentice. If that relation be dissolved, and the parental rights are resumed, the suit may rest upon any consequential damages the parent may have sustained.''

Appellant argues further that the instruction is erroneous, because the appellee did not sue for damages for mental anguish, but alone for the loss of the services of his daughter. We think a fair interpretation of the language of the declaration is that both mental anguish and loss of services of his daughter were relied on as elements of damages. It was alleged in the declaration that, in the seduction of appellee's daughter, the appel-

lant contrived and wrongfully and wickedly intended to injure appellee and bring dishonor, disgrace, and mental distress upon him as well as deprive him of the services of his daughter. Upon those averments in the declaration, the damages sued for were based. It is true the declaration does not set out in so many words that appellee endured humiliation and distress of mind on account of the seduction of his daughter; but, taking the declaration as a whole, we think it could mean nothing else.

The court refused to grant appellant an instruction that, if the evidence showed that appellee's daughter consented to have sexual intercourse with appellant because of the latter's promise that he would give her money, clothes, and an automobile, they should return a verdict for the appellant. The refusal of that instruction is one of the errors assigned and argued by appellant. Appellant's position is that, if the appellee's daughter yielded her person to the appellant because of such promise, there was no seduction. We think the contention unsound. Seduction is not confined to love-making and false promises alone, but may be brought about by promises, on the part of the seducer, of a reward to the female seduced. 24 R. C. L. 734, 735. Chapter 171, Laws of 1914 (section 1148, Hemingway's 1927 Code), makes it a crime on the part of a male person to have carnal knowledge of any unmarried female of previous chaste character, younger than himself, and over twelve and under eighteen years of age. Between those ages a female is incapable of consenting to sexual intercourse. That is the policy declared by the statute and, if she is induced by a male person to give her consent by any sort of promise whatsoever, the male is guilty of seduction.

The action of the court in refusing an instruction asked for by the appellant that, if the evidence showed that appellee's daughter was not of chaste character at

the time of the alleged seduction, they should find for the appellant, is assigned as error. Appellant contends that an unchaste female cannot be seduced. It is unnecessary to decide that question, for there was no evidence in this case upon which to base the instruction. The testimony of the witness, Rouse, that he had seen appellee's daughter and a young man, between sundown and dark, near a barn in the ship yard, we think was wholly insufficient to raise the question of her chastity. That evidence, and that alone, was all that appellant had to rely on as tending to show unchastity.

Appellant complains that the refusal of the court to grant an instruction requested by him to the effect that, if appellee's daughter agreed to have sexual intercourse with appellant to gratify her own desire, and not by reason of any false promise of marriage, deceit, or flattery, the jury should return a verdict for the appellant. There was no error in refusing this instruction, because there was no evidence upon which to base it. Appellee's daughter testified that she yielded her person to appellant because of his love-making and promises of reward. Her testimony was uncontradicted either by direct or circumstantial evidence. Therefore, it was not an issue before the jury as to the ground on which appellee's daughter yielded to appellant.

Over appellant's objection, appellee was permitted to show that appellant was brought to Pascagoula under arrest. Even though it was error to admit such evidence, we think the error was without harm to appellant.

The other assignments of error, we think, are without merit, and are not of sufficient gravity to require a discussion by the court.

*Affirmed.*