KITCHENS, Justice,
dissenting:
¶ 28. No law of this State precludes minor children from bringing, claims of alienation of affection against interlopers whose misconduct interferes with familial harmony. I would hold that the minor children in the present case have standing to pursue alienation of affection claims against Dr. Brent, and I respectfully dissent from the majority’s decision to the contrary.
¶ 29. My colleagues in the majority say that “[njothing in Vennit’s brief convinces the Court that the alienation of marital affections naturally results in the subsequent alienation of parental affections such that a minor child might have a cause of action against the lover of the straying *853 spouse.” (Emphasis in original.) But those learned justices assume that the tort of alienation of affection is aimed only at protecting the marital relationship and not the family relationship as a whole. Of course, it is not the parental affection for the child which is lost when familial harmony is disrupted by a third party. It is the family unit, that children of the marriage are entitled to enjoy, which is damaged by the pernicious interloper. And those children, unjustly harmed by the diminution of familial affection, ought to have standing to bring alienation of affection claims against the party whose wrongful conduct proximately caused or contributed to the dissolution of the family.
¶ 30. It is true, as the majority posits, that “[i]n every case considered by [this] Court, a husband or wife has brought the claim for alienation of affection.” But this Court’s not having entertained the question previously does not foreclose our serious and open-minded consideration of the possibility that children also have standing to prosecute such a claim. Our early alienation of affection cases, in which this Court allowed relief where third parties had interfered with familial harmony, lend strong support to Vennit’s argument that children ought to have standing to bring claims against offenders who harm or destroy previously harmonious families.
¶ 31. One case to which Vennit points the Court is that of Tucker v. Tucker, 74 Miss. 93, 19 So. 955 (1896), in which this Court recognized a father-in-law’s potential liability for intrusion into the marriage of his daughter and son-in-law. The 1909 case of Sivley v. Sivley, 96 Miss. 134, 50 So. 552, 552 (1909), involved a jury verdict in favor of a wife for alienation of affection where it was proven that the wife’s mother-in-law had alienated her son’s affection for his spouse. Likewise, in McRae v. Robinson, 145 Miss. 191, 110 So. 504, 505, 507 (1926), a husband successfully sued his parents-in-law and other third parties for alienation of his wife’s affection, though the case was reversed on appeal because the jury had not been instructed that the actions of the third parties had to have been malicious. More recently, a case in which a husband sued his wife’s employer for alienation of affection where it was alleged that the employer “recklessly [had] allowed her and a coworker to engage in an extramarital affair in the workplace” survived the defendant’s motion to dismiss in the trial court. Children’s Medical Group, P.A. v. Phillips, 940 So.2d 931, 932, 936 (Miss.2006). This Court affirmed the trial court’s denial of the motion to dismiss: “We are unable to say, as a matter of law, that there are no possible facts which could result in CMG’s liability for alienation of affections.” Id. at 935.
¶ 32. This Court liberally has permitted spouses alleging alienation of affection to bring claims against third parties other than paramours. It never has limited such causes of action to paramours as defendants, but rather has recognized that any kind of intrusion into the marriage is actionable by the spouse who is alleged to have been robbed of the affection of his or her spouse. Yet today’s majority declines to recognize that children likewise affected by the intrusion of a third party into the family unit ought to have standing to bring suit for the alienation of familial affection. The majority acknowledges that “[a]l-though nonparamours were named as defendants, the party bringing the claim in each case was a spouse.” (Emphasis theirs.) The majority continues: “the Court’s precedent supports that the tort exists to protect the marital relationship, not the familial relationship as a whole.” I respectfully disagree, finding no prior decision of this Court precluding claims by children thus damaged. The majority’s exclusion of children strikes me as oddly *854 harsh, as there is, in my mind, a sound and highly credible argument to be made that children often are the most innocent, the most vulnerable, and the most grievously injured victims of familial wreckage.
¶ 33. The Court, however, squarely has addressed cases in which parents sued to recover for the loss of the society, affection, and services of children, which are analogous to alienation of affection claims. In Ellington v. Ellington, 47 Miss. 329, 344, 1872 WL 6171 (1872), this Court considered “the wrong done the parent in the seduction of his child.” According to the Court, “[t]his form of action, was early accepted — grounded on the [ancient] idea that the daughter bore the relation of a servant to the parent; the declaration alleging, ‘per quod, servitum amisit.’ ”[6] Id. The Court opined, “[t]he value of the society or services of a daughter consists very much in the innocence and purity of her person and character, and are greatly depreciated in consequence of her defilement, which not unfrequently occasions their total loss.” Id. at 353. Though the claim in Ellington was not one for alienation of affection, the loss of society or services of the daughter and the impact on the family of her defilement clearly were seen as actionable in Nineteenth Century Mississippi. To this day, that case has been neither overruled nor modified.
¶ 34. Similarly, more than fifty years later, in Stone v. Bang, 153 Miss. 892, 122 So. 95, 95, '96 (1929), a father sued a preacher who had seduced the man’s daughter and taken her to New Orleans, and this Court upheld a $2,000 verdict against the wicked vicar. But the majority finds “[t]hat case not relevant to the discussion,” since “[t]he claim was brought under a statute[7] that specifically allowed parents to ‘bring an action for the seduction of a daughter.’” Id. at 95. I respectfully disagree, finding the case highly relevant to the discussion. The statute, consistent with the common law rule articulated in Ellington, made actionable any interference in the familial relationship between parents and a daughter. If parents could sue for the loss of the society or services of a child, then conversely the logic of the common law provides a child a cause of action for the intrusion of a third party into the family relationship.
¶ 35. As the majority notes, alienation of affection actions protect, among other things, “the right to live together in the same house, to eat at the same table, and to participate together in the activities, duties and responsibilities necessary to make a home.” Kirk v. Koch, 607 So.2d 1220, 1224 (Miss.1992) (quoting Tribble v. Gregory, 288 So.2d 13, 16 (Miss.1974)). The majority opines that “[t]he loss of consortium described in Kirk is personal to a husband and wife and does not contemplate children.” I disagree. Entitlement to sexual relations, of course, is a right exclusive to the marriage. But “society, companionship, love, affection, aid, services, support,” additionally constitute the rights to consortium contemplated in Kirk. They are not all, as the majority contended, “personal to a husband and wife.” The marital children share in many valuable familial rights. The loss or reduction of those familial rights, as in Ell *855 ington and Stone, ought to be actionable by marital children.
¶36. While Mississippi has not previously addressed standing of children to bring claims of alienation of affection against a parent’s paramour, other courts have. The Appellate Court of Illinois held that the tort of alienation of affection “involve[s] the rights which all members of the family have a right to protect” and that “the State likewise has an interest in the sacredness of the family relationship.” Johnson v. Luhman, 880 Ill.App. 598, 71 N.E.2d 810, 812-13 (1947) (quoting Heck v. Schupp, 394 Ill. 296, 68 N.E.2d 464 (1946)) (emphasis added). That court continued: “As against the world at large a child has an interest in the relation (with his parents) because of the support he may expect. ... Also, he has an interest in the security and affection of the parent, at least while he remains in the household....” Johnson, 71 N.E.2d at 813 (quoting Roscoe Pound, Individual Interests in the Domestic Relations, 14 Mich. L.Rev. 177, 185 (1916)). Ultimately, the court there held the following:
Defendant’s conduct resulted in the destruction of the children’s family unit— that fortress within which they should find comfort and protection at least until they reach maturity — and deprived them of the unstinting financial support heretofore contributed by their father, as well as of the security afforded by his affection and presence.
Johnson, 71 N.E.2d at 814. See also Daily v. Parker, 152 F.2d 174, 177 (7th Cir. 1945) (“[A] child today has a right enforceable in a court of law, against one who has invaded and taken from said child the support and maintenance of its father, as well as damages for the destruction of other rights which arise out of the family relationship and which have been destroyed or defeated by a wrongdoing third party.”).
¶ 37. Additionally, the Supreme Court of Minnesota considered the question “whether a minor child has a cause of action against one enticing its parent from their family home to recover damages sustained as a result of the enticement.” Miller v. Monsen, 228 Minn. 400, 401, 37 N.W.2d 543 (1949). The court answered in the affirmative, stating that:
It is the foundation of civil society, sanctioned as such by both civil and ecclesiastical authority. It provides not only shelter, food, comfort, family life, happiness, and security for its members, but also instruction in, and example of, virtue, morality, and character. Not only the permanent welfare of the human race, but also the great advances of civilization, such as the elevation of woman to social equality, the education of children, the refinement of manners, the awakening of the finer things and subjugation of the gross in man, may be directly traced to it as, an institution. Human Society could not endure without it.
Id. at 402, 37 N.W.2d 543. The United States District Court for the Western District of Michigan held that “a child has legally protected rights in the maintenance of the family relationship against interference by outsiders, and that enticement by an outsider of the parent from the family home constitutes an invasion of the child’s rights, for which it may maintain an action for damages.” Russick v. Hicks, 85 F.Supp. 281, 285 (W.D.Mich.1949).
¶ 38. The majority, however, argues that “in Minnesota and Michigan, alienation of affection has since been legislatively abolished.” That may be so. But Miller did not involve an alienation of affection claim. • And in Russick, the court noted that the childrens’ suit “is not- the traditional alienation-of-affections suit — it is an action to recover damages for a *856 direct wrong to the infant plaintiffs, that is, the wrongful invasion of their family relationships and the loss of the benefits therefrom.” Russick, 85 F.Supp. at 286. That court continued that it “is convinced that the above statute [abolishing the alienation of affection cause of action] did not abolish, and does not bar, the right of action asserted by the plaintiffs in the present case.” Id. at 287. The cases merely demonstrate situations in which other courts have allowed recovery to children on the basis of intrusion into the family. I find the authority persuasive to the extent that it establishes a sound, albeit minority, precedent for allowing children to bring claims against an interloper whose conduct resulted in familial discord.
¶ 39. The majority further opines that Vennit’s analogy of alienation of affection to the context of wrongful death is misplaced: “[a] minor child loses the affection and society of a deceased parent because that parent is no longer living and is, therefore, not even physically available for affection and society.” (Emphasis in original.) But, again, the majority’s distinction is based on the erroneous assumption that alienation of affection exists solely to protect the marital relationship, and not the familial relationship as a whole. I reject that premise. In the context of an alienation of affection claim, the family unit is dead, much like a deceased parent in the context of a wrongful death claim. The society and companionship of the family as a unit, and not merely that of the enticed parent, forever is lost.
¶ 40. This Court expressly has upheld the claim of alienation of affection: “[I]n the interest of protecting the marriage relationship and providing a remedy for intentional conduct which causes a loss of consortium, this Court declines the invitation to abolish the common law tort of alienation of affections in Mississippi.” Fitch v. Valentine, 959 So.2d 1012, 1020 (Miss.2007). The Court continued:
Alienation of affections is the only available avenue to provide redress for a spouse who has suffered loss and injury to his or her marital relationship against the third party who, through persuasion, enticement, or inducement, caused or contributed to the abandonment of the marriage and/or the loss of affections by active interference.

Id.

¶ 41. Alienation of affection is a common law tort, never enacted by the legislature, but judicially recognized by this Court as early as 1896 in the case of Tucker v. Tucker, 74 Miss. 93, 19 So. 955 (1896). See David Neil McCarty, Love in Vain: The Social Value of Mississippi’s Alienation of Affection in Protecting Marriage, 31 Miss. C.L.Rev. 107, 111 (2012) (“The first reported alienation of affections case rears its head in 1896, although it is clear from the text of the case that the tort was known even before that date.”) Since alienation of affection is a creature of jurisprudence, this Court is at liberty to expand it. See Yazoo & M.V.R. Co. v. Scott, 108 Miss. 871, 67 So. 491, 493 (1915) (quoting Western Union Telegraph Co. v. Allen, 66 Miss. 549, 6 So. 461, 463 (1889)) (“The courts then [that is, in the early history of English law], as the courts now, conscious of the needs of the public, expanded the principles of the law, [and] fitted them to the exigencies of the occasion....”) I advocate for an expansion of the common law tort of alienation of affection to include children and to protect not only the marital relationship, but also the important relationship of the family itself. An interloper’s misconduct adversely affects not only the wronged spouse, but also the children whose right to familial harmony and stability ought to be recognized and protected *857 by the judicial branch of Mississippi’s government.
¶ 42. Because I would affirm the chancellor’s denial of summary judgment to Dr. Brent, I respectfully dissent.
CHANDLER AND KING, JJ., JOIN THIS OPINION.

. "Whereby he lost the services (of his servant).” Black's Law Dictionary 1323 (10th ed. 2014).

. According to Stone, that statute was "section 720, Code of 1906 (Section 514,' Hemingway's 1927 Code).” Stone, 122 So. at 95. The current version of this statute is Mississippi Code Section 11-7-11 (Rev. 2004) ("A parent may bring an action for the seduction of a child, although such child be not living with nor in the service of the plaintiff, and though there be no loss of service....")