[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 254 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 255 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 257 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 258 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 259 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 260 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 261 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 262 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 263 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 264 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 265 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 266 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 268 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 269 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 270 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 271 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 272 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 273 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 274 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 275 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 276 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 277 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 278 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 279 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 280 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 281 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 282 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 283 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 284 
Whatever may be said of the precise points in judgment when this case was here upon a former occasion, it is plain that the judge on the second trial charged the jury in conformity with the views presented in the prevailing opinion on the former appeal. Those views are supposed to have received the concurrence and approval of a majority of the court, and at all events to have suggested themselves to the court as probably sound, whether or not they were entitled to absolute authority in controlling the proceedings on the second trial. It is not, perhaps, well to be unduly critical in concluding the parties by the former decision. The questions now arise and call for direct and precise adjudication; and as they have *Page 285 
been fully, ably and learnedly discussed, perhaps no more fit occasion will be presented for a judicial exposition of the statute under which these proceedings were had, so far as the same remains open for examination.
Although the briefs now presented are somewhat voluminous, the points are few and are confined to exceptions to a single species of evidence, and to exceptions to the charge and refusals to charge. They may be ranged under the following heads:
1. Exceptions to the charge that the jury might take into consideration the nurture, instruction and physical, moral and intellectual training which the mother gave to the children.
2. Exceptions to the refusal of the judge to restrict the damages to the minority of the children.
3. Exceptions to the charge that prospective damages were allowable.
4. Exceptions to the evidence of the business capacity of the mother.
The charge of the judge was explicit that the damages must be limited to pecuniary injuries; and he said that in estimating them they had a right to consider the loss (that is, the pecuniary loss) which the children had sustained in reference to their mother's nurture, and instruction, and moral, physical and intellectual training. I think this does not imply that the children are necessarily and inevitably subjected to such a loss, but leaves it to the jury to determine whether any such loss has been in fact sustained, and if so, the amount of such loss. This is the fair scope and meaning of the charge, and if it was not sufficiently explicit, should have been made so by a direct request for such purpose. This understood, I regard it as unexceptionable. It is certainly possible, and not only so but highly probable, that a mother's nurture, instruction and training, if judiciously administered, will operate favorably upon the worldly prospects and pecuniary interests of the child. *Page 286 
The object of such training and education is not simply to prepare them for another world, but to act well their part in this, and to promote their temporal welfare. If they acquire health, knowledge, a sound bodily constitution and ample intellectual development under the judicious training and discipline of a competent and careful mother, it is very likely to tell favorably upon their pecuniary interests. These are better, even in a pecuniary or mercenary point of view, than a feeble constitution, impaired health, intellectual ignorance and degradation and moral turpitude. To sustain the charge, it is enough that these circumstances might affect their pecuniary prospects. It was left to the jury to say whether in the given case they did so or not, and if so, to what extent. It is no answer to this view to say that wealth is sometimes associated with infirm health, mental degradation and moral turpitude. Cases of this kind do occur, but they do not make the rule, nor tend to show that the healthy growth and expansion of the physical, intellectual and moral powers with which a kind providence has endowed us do not tend to our worldly advantage. I do not understand from the phraseology of the statute that an extremely nice and contracted interpretation should be put upon the term "pecuniary injuries." A liberal scope was designedly left for the action of the jury. They are to give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death. They are not tied down to any precise rule. Within the limit of the statute as to amount, and the species of injury sustained, the matter is to be submitted to their sound judgment and sense of justice. They must be satisfied that pecuniary injuries resulted. If so satisfied, they are at liberty to allow them from whatever source they actually proceeded which could produce them. If they are satisfied from the history of the family, or the intrinsic probabilities of the case, that they were sustained by the *Page 287 
loss of bodily care, or intellectual culture, or moral training, which the mother had before supplied, they are at liberty to allow for it. The statute has set no bounds to the sources of these pecuniary injuries. If the rule is a dangerous one, and liable to abuse, the legislature and not the courts must apply the corrective.
The charge is supposed to have been particularly objectionable because it set before the jury moral training and culture as one of the sources of pecuniary benefit, which the jury were at liberty to consider. It would be an effectual though technical answer to this exception to say that the charge was not objected to specifically on that ground, and that if the charge is sustainable on the score of physical and mental training supplied by the mother, it cannot be rejected as erroneous because in the same sentence moral culture was included without a specific objection. But I think it defensible on the grounds already advanced, that moral culture, like bodily health and mental development, improve and perfect the man and fit him not only for a more useful but a more prosperous career, for worldly success as well as social consideration. It is not essential to show that they necessarily result in direct pecuniary advantage; it is sufficient that they may do so; that they often do so; that it is possible and not improbable that such may be the result, and that, therefore, these items may be set forth and presented for the consideration and deliberation of the jury, to be disposed of as they shall deem to be just. I think the exception is not well taken if they may possibly result in pecuniary benefit and do not tend in a contrary direction. I concede these are quite general and to some extent loose and indefinite elements to enter into a safe and judicious estimate of actual pecuniary damage, but I am unable to find in the statute a restriction which shall confine it within narrower limits.
Nor do I perceive any sufficient legal reason for limiting the damages to the minority of the children if the jury *Page 288 
are legally persuaded they would continue after that age. It cannot be denied that the deprivation of parental instruction and training and discipline, after that age, is more or less detrimental to the child in a pecuniary point of view, and I see no arbitrary injunction in the statute peremptorily to exclude such considerations from the jury. The judge seems to have submitted this part of the case to the jury with cautious directions. He instructed the jury that if they could, under the evidence, fairly conclude that the children, at any age, would receive pecuniary benefit from the instructions and counsel of the mother, they were entitled to allow for it such damages as would naturally and proximately result. The judge further charged that beyond the age of twenty-one years the jury must proceed with caution, and allow only those damages which, under the evidence, they should find would and did reasonably and proximately result from the death of the mother by the wrongful act of the defendants. He further stated to the jury that he did not charge that the jury must allow for damages beyond twenty-one years. Assuming, as I think we must, that there is not, either in the statute or in principle, any peremptory injunction to confine the damages absolutely to the minority of the children, the case seems to have been put to the jury on this point with proper limitations.
Nor do I think it was erroneous to instruct the jury that while they must assess the damages with reference to the pecuniary injuries sustained by the next of kin in consequence of the death of Mrs. Tilley, they were not limited to the losses actually sustained at the precise period of her death, but might include also prospective losses, provided they were such as the jury believed, from the evidence, would actually result to the next of kin as the proximate damages arising from the wrongful death.
If damages of the character alluded to, to wit: those arising from the deprivation of the training and education *Page 289 
which the parent would bestow were allowable at all, the loss which the children would sustain by the death must necessarily be such as should arise from the nurture and training to besubsequently bestowed. That which had been already given, and of which the children had already reaped the benefit, could not be increased by the continued life of the parent, nor curtailed by her sudden death. The result had been already realized. But her sudden and wrongful removal was the withdrawal — the permanent and perpetual withdrawal — of a moral and intellectual fund from which the children were constantly deriving pecuniary aliment and support. And it is this withdrawal which formed the basis of the whole allowance for any damage arising from this source. The length of time such benefit would have been enjoyed was left to the jury, under proper instructions. They were charged to find it from the evidence; they were charged to limit the recovery to such damages as would actually result, and to such damages as were proximate and not remote.
The only remaining question concerns the admission of evidence in relation to the capacity of the mother to conduct business and make money.
If the results already announced rest on a sound foundation, then this evidence was proper, as aiding the jury in arriving at a proper result in regard to the pecuniary benefit which the mother was to her children, and the capacity of the mother to bestow such training, instruction and education as would be pecuniarily serviceable to the children in after life. It is not denied that if the mother had, by her industry and business capacity, acquired a certain pecuniary capital, the amount of it would be proper to be proved. Would it be improper to show that it was likely to be increased by her industry, her economy, her capacity for business, and her judicious conduct of business affairs? All these are elements of pecuniary success — component parts in fact of that pecuniary capital, of the *Page 290 
continued exercise and employment of which the children were entitled to the benefit, and of which the wrongful act of the defendants deprived them. This was evidence, moreover, of the circumstances, situation, engagements and surroundings of the family, which seems on general principles always proper to give with the view of daguerreotyping to the jury the actual condition of affairs, which it is so important for them to understand, the extent and details of which must generally be left to the sound discretion of the trial judge. It contains no positive illegal element, and may often be of essential service in giving to the jury a practical view of the case.
Most of the views here presented are discussed and elaborated in the opinion pronounced when the case was here on a former occasion (24 N.Y. 473 to 477), and their pertinency sustained by considerations more direct and practical than those which are here urged. I refer to them for additional light on this subject. My object here has been mainly to present some general additional views which might possibly aid in a proper interpretation of the statute in question.
I think no error was committed at the trial, and that the judgment of the supreme court should be affirmed.
WRIGHT, MULLIN, INGRAHAM, DAVIES and DENIO, Justices, were also in favor of affirmance. JOHNSON, J., was also for affirmance, on the authority of the former decision in this case; but if the question was open he would agree with SELDEN, J., who read an opinion for reversal, and a new trial. Judgment affirmed. *Page 291