Edward Johnson et al., v. Lydia Luhman, Appellee.
Gen. No. 10,134.

Opinion filed March 5, 1947.   Released for publication March 24, 1947.

RAPHAEL E. YALDEN, of Rockford, for appellants.

B. JAY KNIGHT, FREDERICK H. HAYE and THOMAS A. KEEGAN, of Rockford, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This is an appeal from an order of the circuit court of Winnebago county dismissing the complaint filed by five minor children by their mother, Leone Johnson, against the defendant, Lydia Luhman, for alienating the affections of their father and depriving them of his support and society. The appeal is predicated solely upon the pleadings which consist of the complaint and the motion to dismiss.

The complaint alleges, in substance, that for over 15 years Leone Johnson and her husband, Vincent Joseph Johnson, lived together, raised their family of five children, and possessed an income of not less than $5,000 a year. On July 13, 1944, the defendant, Lydia Luhman, who, professedly, had been a family friend for over three years, induced and enticed the said Vincent Joseph Johnson to desert his wife and minor children and to breach his legal duties to his family.

It is further alleged that he had remained with the defendant and apart from his family since the aforementioned date, and has made no financial contribution to the support of his children except as he has been compelled to do under the terms of a recent court order in another cause. The children contend, therefore, that the conduct of the defendant in alienating the affections of their father and enticing him away from home has deprived them of their rights to support and maintenance, to his paternal care, and to the security of a family life, for which they seek damages in the sum of $25,000 each.

Defendant's motion to dismiss the complaint asserts that no cause of action is set forth therein, inasmuch as at common law a child had no right of action against a third person for enticing a father to leave home, and no such right has been created by the Illinois legislature. It is contended further that the ''Heart Balm Act,'' (pars. 246.1, 246.2, ch. 38, Ill. Rev. Stats. [Jones Ill. Stats. Ann. 37.052, 37.053]) bars such an action; and that there is no allegation in the complaint that the father failed to comply with court order in another cause requiring him to contribute to the support of the children, hence they have sustained no damages of which a court may take cognizance.

From the order of the circuit court sustaining defendant's motion to dismiss, plaintiffs have appealed to this court.

It is readily conceded by the parties that this cause is novel in this State, and that the issue of whether minor children can recover damages from one who has enticed their father away from home and deprived them of his support and society has never been determined by the Illinois courts. Both parties to this cause, therefore, attempt to draw analogies from other legal concepts appertaining to the parent-child relationship and to revered canons of construction enunci-

ated by the courts and by legal scholars, in support of their respective contentions.

Before proceeding to determine the rights of the parties, and to judiciously resolve the legal problem as one of first impression, the court will review the decisions of other jurisdictions where the precise issue has been determined. While those decisions obviously do not constitute binding precedent upon this court, they, nevertheless, warrant analysis and comment.

In *Morrow v. Yannantuono,* 152 Misc. 134, 273 N. Y. Supp. 912 (1934) the New York district court, in a brief and cursory opinion, dismissed a suit by a minor against a person enticing the mother away from home on the ground that the husband had a cause of action, and that to uphold the complaint would open the courts to a flood of litigation. It is apparent, however, that any common-law action could be the subject of abuse which, if unchecked by the court, could provoke a flood of litigation, hence such specious reason can be summarily dismissed.

No reference is made to that decision in the recent case of *Daily v. Parker,* 152 F. (2d) 174 (1945) where minor children living in Pennsylvania brought an action for damages in a federal court against a woman living in Illinois for alienating the affections of their father and inducing him to leave home and live with her. Judge EVANS of the seventh circuit court of appeals, in reversing the order of the district court dismissing the complaint, held that a child has an enforcible right against one who has invaded and taken from such child the support and maintenance of its father, as well as for the destruction of other rights which arise out of the family relationship.

The court approached the problem by analyzing the rights and obligations of all who are parties to a family, and, after a succinct and accurate review of the development of the family as reflected in the law,

concluded that the status of the wife and children, and their respective roles within the family unit, have changed substantially, and warranted the recognition of the rights asserted by the plaintiff minors therein. The opinion recognized, however, that courts have been slow to reflect this change, but emphasized that they have belatedly applied established principles to newly accepted views of the family, and the status of each member, and by such decisions have made law. *Grable v. Margrave,* 4 Ill. 372; *Yundt v. Hartrunft,* 41 Ill. 9; *Betser v. Betser,* 186 Ill. 537; *Walgreen Co. v. Industrial Commission,* 323 Ill. 194; *Milliken v. Long,* 188 Pa. 411, 41 A. 540; *Kine v. Zuckerman,* 4 Pa. Dist. Co. R. 227; *Graham v. Wallace,* 50 App. Div. 101, 63 N. Y. S. 372; *Bennett v. Bennett,* 116 N. Y. 584, 23 N. E. 17; *Waldron v. Waldron,* 45 Fed. 315.

In the course of this analysis the court embraced the philosophy of judicial empiricism, expounded by Dean POUND in, ''The Spirit of the Common Law,'' whereby courts should interpret the common law as sufficiently elastic to meet changing conditions, even though that process is tantamount to law-making by judicial decision.

In this vein Judge EVANS stated unequivocally at p. 177; ''Because such rights have not heretofore been recognized is not a conclusive reason for denying them.''

This decision stimulated and provoked numerous controversial legal studies, in which a variety of legal fictions and concepts were offered on which' liability might have been predicated. (13 U. Chi. L. Rev. 375; 41 Ill. L. Rev. 447; 59 Harv. L. Rev. 297; 46 Col. L. Rev. 464; 15 Ford. L. Rev. 126. It was suggested, therein, that plaintiffs' cause of action in this federal case might have been predicated upon: (1) the established doctrine of *Lumley v. Gye,* (1853) 2 E. &. B. 216, whereby a third person who induces the promissee to breach a contract is liable to the promissor, inasmuch as the defendant therein induced the father to breach

his duty (founded on status rather than contract) to his child, or (2) under the broad principle enunciated in *Wilkinson v. Downton* (1897) 2 Q. B. 57 that unjustifiable wilful conduct which results in harm to plaintiff is actionable, or (3) for the unlawful interference with a "relational interest"; or (4) as a contributing tortfeasor, or (5) by analogy to actions by spouses for alienation of affections, which are now generally based upon an invasion of the marital relation rather than upon the husband's property right to consortium.

It is the opinion of this court, however, that the frank recognition by the circuit court of appeals that the cause was without precedent, but that, nevertheless, the common law was sufficiently flexible to protect what are presently regarded as family rights under our social standards and conceptions of the family unit, is more conducive to the development of unambiguous legal precepts, than if the court had invoked some legal fiction to accomplish what it deemed to be a desirable result.

This decision, moreover, is consistent with the principles of law propounded by the highest court of our State in the recent case of *Heck v. Schupp*, 394 Ill. 296 (1946).

Although the *ratio decidendi* of the *Heck* case, *supra*, is that a husband may sue a third person for alienating the affections of his wife, and that a statute prohibiting such an action is unconstitutional and in violation of section 19 of art. II of the Illinois constitution, nevertheless, the rule of law enunciated by the court is sufficiently broad to encompass and sanction the right of action asserted by the minor children in the instant case.

The court stated at p. 300:

"Moreover, as to criminal conversation and . . . alienation of affections, these involve the rights which all members of the family have a right to protect. Not only does every member of the family have a right to protect the family relationship, but the State likewise

has an interest in the sacredness of the family relationship. Certainly to give a license to one who would disrupt that relationship by tying the hands of injured members of the family is not only in conflict with Sec. 19 of Art. II of our State Constitution, but appears to us to be contrary to all sense of justice.''

It will be noted first that the court stated that ''all members of the family'' have a right to protect the family relationship, and that designation obviously includes the minor children as well as the respective spouses who, heretofore, were the only parties entitled to assert such rights.

The court recognizes, moreover, that where the family relationship has been disrupted, there are ''injured members,'' and not merely an injured husband or wife, and declares, in effect, that these members are entitled to protect their family rights under the broad policy of sec. 19 of art. II of the Illinois constitution.

This section provides: ''Every person ought to find a certain remedy in the law for all injuries and wrongs which he may receive in his person, property, or reputation. . . .''

Irrespective, however, of the foregoing declarations of the law by our Supreme Court, and of the precedent afforded by the federal case of *Daily v. Parker, supra,* this court firmly believes that the complaint filed by the minor children in the instant case states a cause of action.

▮ Legal history reveals that the ancient Roman doctrine of Pater Familias, whereby the father was the lord and master of the household, infiltrated, in fact dominated, the early common law of family relations. (Fisher, ''Pater Familias—A Cooperative Enterprise,'' 41 Ill. L. Rev. 27.) The father spoke and acted for the family unit and the individual members thereof had no distinct identity. Hence, it was stated in 3 Blackstone's Commentaries 143 (1765) ''The child hath no property in his father.''

■ It is common knowledge, however, that a transition has taken place in our conception of the family, and in the law which reflects, in a measure, our social standards. The family is now a co-operative enterprise with correlative rights and duties among all members thereof. The mother as well as the father often assists in procuring an adequate income for the family unit, and both are liable for certain family expenses. She participates on behalf of her family in civic and political activities, and exercises the right to vote and to serve on juries.

■ The children, in turn, are presently regarded more as responsible individuals than as subservient charges, and there are both criminal and civil statutes protecting them from physical abuse and neglect. While they generally contribute only companionship and inspiration to the family circle, they are entitled to both the tangible incidents of family life, such as food, clothing, and shelter, and to the intangible, though equally significant elements of affection, moral support, and guidance from both of the parents.

The lag in the common law to keep pace with these transitions within the family unit, particularly those affecting the interests of the children, was noted by Dean POUND over a quarter of a century ago, in an article entitled, "Individual Interests in the Domestic Relations," 14 Mich. L. Rev. 177, 185 (1916). The learned legal scholar stated:

"As against the world at large a child has an interest in the relation (with his parents) because of the support he may expect . . . Also, he has an interest in the security and affection of the parent, at least while he remains in the household. But the law has done little to secure these interests."

The courts have recognized to some extent, however, the child's interest in his relation with his parents, particularly in cases arising after the death of the parent, and the rights of the child are generally predicated on the legal fiction that he has a quasi-

property right in the dead body of his parent (*Spiegel v. Evergreen Cemetery Co.,* 117 N. J. L. 90, 186 A. 585 (1936), or, on the assumption that he has sustained an injury to his personality (*Mentzer v. Western Union Tel. Co.,* 93 Iowa 752, 62 N. W. 1 (1895) ).

Many of the legislatures have likewise endeavored in some measure to protect the child's interest in his relations with his parents through death statutes and dram shop acts.

■ However, the fact that other interests of the child have hitherto been unrecognized, and that there is no binding precedent for redress where his rights have been violated, is not a sufficient justification for the denial of a remedy. (*Daily v. Parker, supra,* and cases cited at p. 177; CARDOZO "Growth of the Law.")

Under those circumstances it is the province of the court to "fill in the gaps." The eminent jurist, BENJAMIN CARDOZO, in his famed series of lectures at Yale Law School, stated:

"The judge fills the open spaces in the law . . . Within the confines of these open spaces and those of precedent and tradition choice moves with a freedom which stamps its action as creative. The law which is the resulting product is not found but made. . . . I have grown to see that the 'judicial' process in its highest reaches is not discovery but creation."

It is apparent from the uncontroverted facts appearing in the pleadings of the instant case that defendant, while posing as a friend of the family's did alienate the affections of plaintiffs' father, and induce and entice him to live with her and leave his five children and wife with whom he had lived for over 15 years. Defendant's conduct resulted in the destruction of the children's family unit—that fortress within which they should find comfort and protection at least until they reach maturity—and deprived them of the unstinting financial support heretofore contributed by their father, as well as of the security afforded by his affection and **presence.**

Are they to be deprived of redress for this grievous wrong merely because the precise issue has not heretofore been determined in this jurisdiction?

Clearly, to sustain defendant's contention that the absence of precedent bars plaintiffs' redress in this cause, would be in direct contravention to sec. 19 of art. II of our State constitution, and would put a premium on the violation of the moral law. *Heck v. Schupp, supra.*

Furthermore, there is nothing contained in the cases cited by defendant with reference to the legal position of children at common law, which would specifically or by implication bar the right of action presented herein. Nor does defendant's recital of statutes protecting minors indicate anything more than an increasing solicitude on the part of the State toward children, for there is nothing contained in any of the provisions which tends to limit or prohibit plaintiffs' right of action.

On the contrary, it is the opinion of this court that a frank recognition of the changes within the family unit, which has now become a cooperative enterprise, makes it apparent that much of the ancient law of domestic relations is anachronistic.

This court, therefore, is convinced that the minor children herein have a right to protect their relationship with their parents and are properly entitled to seek damages from one who has destroyed their family unit. Not only is this conclusion warranted by a judicious interpretation of the common law, but it is consistent with the precedent established by the seventh circuit court of appeals, with the principles of law propounded by our Supreme Court in *Heck v. Schupp, supra,* and with the doctrine of justice embodied in the Illinois constitution.

The order of the circuit court of Winnebago county dismissing the complaint should therefore, be reversed, and the cause reinstated.

*Judgment reversed and remanded.*