# HELEN MILLER AND OTHERS v. HAROLD MONSEN.[1]

May 6, 1949.

No. 34,913.

John R. Foley and Daniel F. Foley, for appellant.
Enger, Mount & Sieh, for respondents.

PETERSON, JUSTICE.

Plaintiff, a minor six years old, by her guardian sues to recover damages alleged to have been sustained as a result of defendant's enticing her mother from their family home. The verdict was for plaintiff. Defendant appeals.

The question for decision is whether a minor child has a cause of action against one enticing its parent from their family home to recover damages sustained as a result of the enticement.

The facts from which the question emerges are that plaintiff is a girl six years old; that she lived with her father, mother, brothers,

---

[1]Reported in 37 N. W. (2d) 543.

and sisters as a family on a farm; that prior to July 5, 1945, her mother in the course of her normal conduct as such rendered to plaintiff a mother's love, affection, devotion, care, and services; that on the date mentioned defendant enticed her mother from their home and family to go with him; and that by such enticement defendant destroyed the relation then existing between plaintiff and her mother, thereby causing plaintiff loss of the benefits flowing to her from such relationship.

We are not called upon to determine the scope of recovery in an action for enticement, if one lies, but rather to determine whether such an action lies at all. Plaintiff contends that as a child and member of the family she had a legally protected right to the maintenance of the family relationship without interference by outsiders and that defendant invaded her family rights by enticing her mother from their home and family. Defendant contends that plaintiff had no such right, for the reason that the right was not only unknown to, but also that there was no precedent for it at, common law; that, since that is true and since the creation of new rights involves the exercise of the legislative function, judicial recognition of such right would constitute judicial legislation; and that consequently defendant has not violated any legal right of plaintiff. In short, plaintiff contends that defendant by the enticement of her mother committed a tort against her, causing loss of the benefits flowing to her from her mother in the course of their family relationship, and defendant contends that he committed no wrong against her, for the reason that she had no legally protected rights in such relationship.

■ At the outset and as a backdrop against which our discussion should be viewed, it should be remembered that family rights consist of two kinds, viz., (1) those of the members of the family among themselves; and (2) those of the members of the family as against the world. Among the former are such duties of the parent as providing his child with support, education, and protection, and of the child to render obedience and services to the parent. Haugen v. Swanson, 222 Minn. 203, 23 N. W. (2d) 535; 5 Dunnell, Dig. & Supp.

§§ 7302-7308. As a practical proposition, the family is in large measure a self-governing unit so far as concerns its internal affairs. Matarese v. Matarese, 47 R. I. 131, 131 A. 198, 42 A. L. R. 1360. From a social point of view it is also a most important one. It is the foundation of civil society, sanctioned as such by both civil and ecclesiastical authority. It provides not only shelter, food, comfort, family life, happiness, and security for its members, but also instruction in, and example of, virtue, morality, and character. Not only the permanent welfare of the human race, but also the great advances of civilization, such as the elevation of woman to social equality, the education of children, the refinement of manners, the awakening of the finer things and subjugation of the gross in man, may be directly traced to it as an institution. Human society could not endure without it. See, True v. True, 6 Minn. 315 (458). Among the rights of the members of a family as against the world are those of having the family maintained intact without interference by outsiders. Heck v. Schupp, 394 Ill. 296, 68 N. E. (2d) 464; Pound, *Individual Interests in the Domestic Relations*, 14 Mich. L. Rev. 177; Pollock, Torts (14 ed.) pp. 181-182. In the Heck case, it was held (394 Ill. 300, 68 N. E. [2d] 466) that not only "every member" of the family has a "right" to protect family rights against outside interference (there criminal conversation with the wife), but that the state also has an interest in the protection thereof. This right is protected also under the constitution of the United States against outside interference even by government. Pierce v. Society of Sisters, 268 U. S. 510, 45 S. Ct. 571, 69 L. ed. 1070, 39 A. L. R. 468; Meyer v. Nebraska, 262 U. S. 390, 43 S. Ct. 625, 67 L. ed. 1042, 29 A. L. R. 1446.

The instant case involves the family rights of the child as against the world, not those of the child as a member of the family as against other members thereof. The authorities upon this question are not only of recent date, but also are in hopeless conflict. We hold, in accordance with what we deem to be the better-considered authorities, that a child has legally protected rights in the maintenance of the family relationship against interference by outsiders,

and that enticement by an outsider of the parent from the family home constitutes an invasion of the child's rights, for which it may maintain an action for damages. Daily v. Parker (7 Cir.) 152 F. (2d) 174, 162 A. L. R. 819 (father) ; Johnson v. Luhman, 330 Ill. App. 598, 71 N. E. (2d) 810 (father). There can be no doubt that benefits of the greatest value flow to the child from its mother's love, society, care, and services, which may be a major factor in the welfare of the child during its entire life, and that, because the child's character, disposition, and abilities have a corresponding impact upon society, it is of the highest importance to the child and society that its right to receive the benefits derived from its mother be protected. Such a right has pecuniary value capable of measurement. In cases for the mother's wrongful death, where only the pecuniary value of the mother's life is awarded to the child, and in cases under the federal employers' liability act, where the pecuniary value to the child of a deceased father's life is to be measured separately from that of the mother, it is held that services rendered to a child by a mother fit to render them, such as nurture and training—physical, intellectual, and moral—have pecuniary value capable of measurement, and that, when such services and care are not rendered by the mother, they must be obtained from others and paid for. Michigan Cent. R. Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. ed. 417, Ann. Cas. 1914C, 176; Tilley v. Hudson River R. Co. 24 N. Y. 471, 23 How. Pr. 363; Id. 29 N. Y. 252, 86 Am. D. 297. And, as said in the Tilley case (24 N. Y. 476, 23 How. Pr. 370), while it is the father's duty to provide for his children, this is no adequate reason for holding that the children should not be entitled to recover for the damage occasioned by the loss of their mother, for the reason that such loss is a separate one—"The children have been deprived of that which they were entitled to receive [the nurture and care of their mother], by the wrongful act of the defendants."

Holding that a child has no cause of action for enticement in a case such as this are such cases as McMillan v. Taylor, 81 U. S. App. (D. C.) 322, 160 F. (2d) 221; Rudley v. Tobias, 84 Cal. App. (2d)

454, 190 P. (2d) 984; Taylor v. Keefe, 134 Conn. 156, 56 A. (2d) 768; Morrow v. Yannantuono, 152 Misc. 134, 273 N. Y. S. 912; Garza v. Garza (Tex. Civ. App.) 209 S. W. (2d) 1012. The Taylor and the Garza cases expressly disapprove Daily v. Parker, *supra*.

The cases denying liability in cases of this kind advance as reasons therefor: (1) That a rule imposing such liability would be undesirable as a matter of policy because of the possibility of a multiplicity of actions, possibility of extortionary litigation, and inability of judges to define the child's rights and of juries to properly assess damages; (2) that under early common-law rules a child could not maintain such an action, for the reasons that it had no right of property or of consortium in its parent and that the father both spoke and acted for the family; and (3) that there are no early common-law precedents for such an action. The McMillan case, *supra*, is not persuasive one way or the other, for the reasons that the opinion is a per curiam one containing no discussion of the legal question here involved and that it rests exclusively upon the authority of the Morrow case, *supra*. The Morrow case holds that, because a child has no right of consortium, it has no right at all, and that the right ought not to be allowed as a matter of policy, because to do so would cause a "flood of litigation." The Taylor case adopts the reasoning of the Morrow case and all the reasons contra enumerated above. The Rudley case was decided under a California statute prohibiting such actions. We have no such statute here. The case is not in point. The Garza case, in addition to disapproving the Daily case, also disapproves the Johnson case and follows the Morrow case. We think that the Rudley and Garza cases shed no particular light on the question before us and need not be further considered. The reasons for the decisions in the other cases will be briefly considered.

There is no merit to the contention that allowance of recovery in cases of this kind would produce a *flood* of litigation of the same sort. Assuming it to be true that to allow a right of recovery would increase litigation, that fact would be no valid reason for denying the right, for the plain reason that, if such enticement constitutes

a legal wrong, there should be a remedy to obtain redress. But the contention lacks factual basis. It has been made in other cases where rights have been asserted for which there were no common-law precedents and has been rejected by courts of the highest authority as being without factual justification. Rozell v. Rozell, 281 N. Y. 106, 22 N. E. (2d) 254, 123 A. L. R. 1015. The contention is without force in cases of this kind. 20 Cornell L. Q. 255. Suffi-cient time has elapsed since the decisions in the Daily and Johnson cases, *supra*, for a reasonable trial period. There has been no *flood* of such litigation. This is true, for the obvious reason that there are not enough such enticements to cause even a burdensome increase of such litigation, much less a flood of it. The same may be said of increased extortionary litigation. See Rozell case, *supra*.

We also deem the reason, sometimes given for denying liability in cases of this kind, that courts are incapable of defining the child's rights and that juries are incapable of assessing its damages in such cases, to be without merit. As has been pointed out, courts and juries are required to do precisely those things in certain cases, and do so with complete success. Michigan Cent. R. Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. ed. 417, Ann. Cas. 1914C, 176, *supra;* Tilley v. Hudson River R. Co. 24 N. Y. 471, 23 How. Pr. 363, *supra; Id.* 29 N. Y. 252, 86 Am. D. 297, *supra.*

We shall deal with the rules of the common law and the novelty of actions of this kind in a separate section *infra.*

It is contended also that a child is not entitled to recover for injuries to its parent, citing Eschenbach v. Benjamin, 195 Minn. 378, 263 N. W. 154. The argument is without merit, for the obvious reason that a child's cause of action for enticement of its parent is based upon a direct wrong to the child, for which recovery is sought against the enticer (see, Pickle v. Page, 252 N. Y. 474, 169 N. E. 650, 72 A. L. R. 842; Green, *Relational Interests,* 29 Ill. L. Rev. 460, 479).; whereas an action by a child to recover for injuries to its parent is based upon a direct injury to the parent and an indirect one to the child. As we held in the Eschenbach case, the law does not recognize a cause of action in a child for indirect injuries sustained

as a result of a direct injury to its parent. The child's rights are to be determined by whether its rights have been violated and not whether its parents' have been.

And, finally, it is contended that an action of this kind should not lie because an unemancipated child has no cause of action against its parent for a tort committed against it by the parent, citing Belleson v. Skilbeck, 185 Minn. 537, 242 N. W. 1; Lund v. Olson, 183 Minn. 515, 237 N. W. 188; Taubert v. Taubert, 103 Minn. 247, 114 N. W. 763, and similar cases. The rule of these cases is based upon considerations of public policy, to the effect that, since an action in tort by an unemancipated child against its parent would tend to disrupt family unity and discipline, the welfare of the family and society demands that such actions should not be allowed. It is a sufficient answer to the argument to say that, as has been pointed out, the cause of action in cases of this kind is asserted not against the parent, but the parent's enticer, and that where, as here, the family relationship has been in fact destroyed, the rule does not apply, for the reason that the reasons for the rule do not exist. Garcia v. Fantauzzi (1 Cir.) 20 F. (2d) 524.

■ Novelty of an asserted right and lack of common-law precedent therefor are no reasons for denying its existence. The common law does not consist of absolute, fixed, and inflexible rules, but rather of broad and comprehensive principles based on justice, reason, and common sense. It is of judicial origin and promulgation. Its principles have been determined by the social needs of the community and have changed with changes in such needs. These principles are susceptible of adaptation to new conditions, interests, relations, and usages as the progress of society may require. Sullivan v. Minneapolis & R. R. Ry. Co. 121 Minn. 488, 142 N. W. 3, 45 L.R.A.(N.S.) 612; Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 131 A. S. R. 446, 16 Ann. Cas. 807, 22 L.R.A.(N.S.) 599; Rozell v. Rozell, 281 N. Y. 106, 22 N. E. (2d) 254, 123 A. L. R. 1015. It is but lip service to these principles to say that the common law has such capacity for growth and expansion and then to refuse to allow it effect in a particular case where that should be done. As said in

Funk v. United States, 290 U. S. 371, 383, 54 S. Ct. 212, 216, 78 L. ed. 369, 376, 93 A. L. R. 1136:

"To concede this capacity for growth and change in the common law by drawing 'its inspiration from every fountain of justice,' and at the same time to say that the courts of this country are forever bound to perpetuate such of its rules as, by every reasonable test, are found to be neither wise nor just, because we have once adopted them as suited to our situation and institutions at a particular time, is to deny to the common law in the place of its adoption a 'flexibility and capacity for growth and adaptation' which was 'the peculiar boast and excellence' of the system in the place of its origin."

At the outset we should remember, as was held in Dunlap v. Dunlap, 84 N. H. 352, 356, 150 A. 905, 907, 71 A. L. R. 1055, concerning a child's right to sue its parent in tort, that in many respects the common law is "simply silent" with respect to particular questions involving the rights of parents and children, and that it is pure assumption to say that, because there is no common-law precedent in favor of a particular right, the rule is that there is no such right. In such cases, as the court said (84 N. H. 356, 150 A. 907):

"* * * The issue is, and must remain, an insoluble mystery. All that can be gathered from the early English law and its history is that there are parental rights and duties which may be superior to independent personal rights of the child. The application of this theory, save as to property rights, was not then developed. But it does not follow from this that a dead hand was laid against the proper disposition of the questions when they arose, either here or there. The analogies of the law, and the declared nature and limitations of the relation involved are the materials from which the true conclusion must be evolved."

The reasons given for the supposed common-law rule denying a right of recovery in cases of this kind have ceased to exist, and, because that is true, the rule, if there ever was one, also has ceased

to exist. The early common-law concept that totality of family rights was vested in the husband by reason of such doctrines as those of marital unity of husband and wife and family unity of parent and child has been swept away by modern legislation such as married women's acts preserving to women after marriage their separate existence and individual rights, including that of right to sue in their own names, and by social change which has entirely altered the status, rights, and duties of members of the family not only *inter se* but also as against the world. Many rights formerly vested in the husband are now vested in other members of the family. We cannot refuse to recognize such changes without ignoring the obvious. As said in the Rozell case (281 N. Y. 113, 22 N. E. [2d] 257):

"Legalistic doctrines and ancient traditions like those of identity of husband and wife and family unity between parent and child and other members of the household and intimate legal or social relationship between others as affecting the question of the propriety for allowing suit for personal injuries by one against another are and have been vanishing with the advent of modern means of transportation and the spread of insurance against liability of the wrongdoer and protection for the sufferer. We cannot bury our heads in the sand and ignore the new tendencies and conditions so notorious."

The logical consequence of such change is that now children, the same as parents, have rights as well as duties. It is now recognized that a child has as against outsiders a legally protected interest in the maintenance of the family relationship. Daily v. Parker (7 Cir.) 152 F. (2d) 174, 162 A. L. R. 819; Heck v. Schupp, 394 Ill. 296, 68 N. E. (2d) 464, 167 A. L. R. 232; Johnson v. Luhman, 330 Ill. App. 598, 71 N. E. (2d) 810, all *supra*.

A rule which would allow a child to recover for enticement of its parent would not be different in substance from the now well-settled one which allows a similar right to the parent for enticement of his child. Hence, the child's right to recover for enticement of its parent should be the same as the parent's right to recover for the

enticement of his child. Pollock, Torts (14 ed.) p. 179-180; 20 Cornell L. Q. 255. While Prosser, Torts, pp. 936-937, lays down a contrary rule, upon the authority of the Morrow case, *supra,* the text also states as the author's opinion that reason favors recovery in cases of this kind, in the following language:

"* * * It has been contended, *with obvious reason,* that the child's interest in an undisturbed family life is of at least equal importance with that of the parents, and is entitled to equal consideration; * * *." (Italics supplied.)

Strong analogy for a rule allowing a child to recover for enticement of its parent is to be found in the numerous situations where intentional interference with a legal relationship causing loss to the injured party of benefits reasonably expected to flow to him from the continuance of the relationship is held to be actionable, even though the benefits result not as a consequence of enforceable legal right, but merely as of reasonable expectancy. The privilege of receiving the benefits is a right which the law protects against unreasonable interference. The rule is that intentional interference with a relationship from which legally unenforceable benefits flow to a party is actionable, as, for example, that of an employe to obtain reëmployment from his former employer where the interference causes loss of reëmployment (Joyce v. G. N. Ry. Co. 100 Minn. 225, 110 N. W. 975, 8 L.R.A.[N.S.] 756); that of a person engaged in business to obtain trade from the public where the interference causes the tradesman loss of expected trade (Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 131 A. S. R. 446, 22 L.R.A.[N.S.] 599, 16 Ann. Cas. 807, *supra;* Winston & Newell Co. v. Piggly Wiggly Northwest, Inc. 221 Minn. 287, 22 N. W. [2d] 11); and that of a person to enjoy expected social intercourse where the interference causes loss of such intercourse (Deon v. Kirby Lbr. Co. 162 La. 67, 111 So. 55, 52 A. L. R. 1023; 52 Am. Jur., Torts, § 39). It is well settled also that wrongful interference with contract rights legally enforceable between the parties to the contract is actionable. Wolfson v. Northern States Management Co. 210 Minn. 504, 299 N. W.

676; Johnson v. Gustafson, 201 Minn. 629, 277 N. W. 252. In certain other situations where there is an independent right of recovery, as, for example, under the wrongful-death act, recovery may be had for the beneficiaries of the action of loss of benefits such as expected support and pecuniary contributions for which there is no basis except that of *reasonable expectancy* that decedent would have continued to render them if he had continued to live (Gordon v. Pappas, 227 Minn. 95, 34 N. W. [2d] 293 [adult child to parents] ; Thoirs v. Pounsford, 210 Minn. 462, 299 N. W. 16 [adult sister to adult sisters] ; 16 Am. Jur., Death, §§ 236, 237).

By analogy, the child's privilege of receiving the benefits flowing to him from his mother as a result of the family relationship should be equally protected as a legal right. It makes no difference in this connection whether the mother, as between herself and her children, is or is not under legal duty to render service and care to her children. The fact is that such service and care flow ordinarily as a matter of course from the parental relationship, unless it is interfered with. As Blackstone said (1 Blackstone, Commentaries, 435 [Chitty's ed. 447]) of the parent's natural duty to maintain his child: "Providence" has implanted in man instincts, feelings, and affections which move him more effectually than municipal law to support and care for his child notwithstanding any deformity of person or mind or "wickedness, ingratitude, and rebellion of children." At least in the cases other than those involving legally enforceable contractual rights, cited in the preceding paragraph, recovery was allowed for loss of less secure benefits caused by interference with an existing relationship.

It seems reasonable to allow a child to recover for the enticement of its parent the loss of benefits flowing to it as a consequence of the parent-child relationship the same as a former employe has a right to recover for loss of expected reëmployment by his former employer caused by wrongful interference by another; as a tradesman has to recover for loss of expected patronage caused by wrongful interference by another; and as a person has a right to recover for loss of benefits expected to result from social intercourse with

others. The child's damages are as certain and direct as those in the cases mentioned, including those for wrongful death cited above. The basis for recovery in the cases mentioned above is that defendant's wrongful interference with plaintiff's relationship with another has caused him loss of benefits flowing from the relationship. A child sustains similar loss by enticement of its mother from their home. Enticement of a mother is a grievous, outrageous, and tragic wrong to her child. The child should have a right to recover in such cases, and we so hold.

Furthermore, allowance of recovery here changes no rule of law. It upsets no precedent. We could advance further reasons for our decision, but think that we have said enough.

Our conclusion is that plaintiff is entitled to recover and that there should be an affirmance.

The parties having stipulated that decision here should be decisive of appeals taken by defendant in similar actions in which Ruth Miller and Richard Miller, minors, are plaintiffs, there also will be an affirmance in each of those cases.

Affirmed.