**RUSSICK** *et al. v.* **HICKS.**

No. 1183.

United States District Court
W. D. Michigan, S. D.

Aug. 31, 1949.

Urban A. Lavery, of Chicago, Illinois, and Jack W. Korn, of Cadillac, Michigan, for plaintiffs.

Alfred J. Fortino and Ralph L. Goggin, both of St. Louis, Michigan, and John M. Dunham, of Grand Rapids, Michigan, for defendant.

STARR, District Judge.

Plaintiffs Charles Theodore Russick and Robert Lee Russick, infants four and two years of age respectively, by Theodore L. Russick as next friend, bring this action against defendant Hicks to recover damages which they allege result from his having enticed and induced their mother to leave and desert them and their family home.

In their complaint and amendment thereof plaintiffs allege that they are the children of Theodore L. Russick and Mabel Bailey Russick, who were married in 1941; that from the time of their respective births to December 31, 1947, they lived with their mother and father in the family home in Michigan; that during all of that time their mother was a devoted mother and with the assistance and cooperation of their father provided them with all the usual comforts, resources, loving care, and attention to which children of their tender years are accustomed and entitled. They allege that defendant Hicks was a neighbor, friend, and associate of their parents and a frequent visitor in their home; that for some months prior to December 31, 1947, and culminating on that day, defendant Hicks enticed and induced their mother to leave and desert them and their family home, and to go to other places where defendant might associate and consort with her; and that as a result of his enticement and inducement, defendant Hicks has caused their mother to continuously remain away from them and their home. They further allege that because of defendant's wrongful acts and doings, their rights as infants to the maternal care, attention, support, and affection of their mother, and their right to have their home with their father and mother remain inviolate and undamaged, have been totally destroyed for all time in the future; and that they have entirely lost the maternal care, devotion, attention, and affection of their mother, which they would have been entitled to receive and would have received except for the wrongful acts and doings of the defendant. Plaintiffs further allege

that on April 19, 1948, subsequent to the events set forth above, their mother and father were divorced by decree entered in the circuit court for Missaukee county, Michigan; that this decree awarded their custody and control to their father; that shortly thereafter their father removed his residence and domicile from the State of Michigan to the State of Ohio and at the same time, by virtue of his custody and control of plaintiffs, removed their residence and domicile to the State of Ohio; and that plaintiffs thereby became and are citizens of Ohio.

The defendant filed motion to dismiss the complaint for reasons which may be summarized as follows: (1) That the court is without jurisdiction because there is no diversity of citizenship; (2) that although the suit purports to be brought by the next friend of the infant plaintiffs, the complaint does not show or allege any judicial appointment of a next friend; and (3) that the complaint fails to state a claim upon which relief can be granted, because the alleged cause of action is not recognized in Michigan either at common law or by statute, and because Michigan's so-called "heart-balm statute," Act No. 127, Pub. Acts Mich.1935, Comp.Laws 1948, § 551.301 et seq., Stat.Ann. § 25.191 et seq., has abolished such civil actions.

■ At the conclusion of a hearing and the taking of testimony on the question of diversity of citizenship raised by defendant's motion, the court ruled that plaintiffs had satisfactorily established that when this suit was begun, they were domiciled in Ohio and were citizens of that State, that defendant was a citizen of Michigan, and that there was the requisite diversity of citizenship to give the court jurisdiction. This ruling disposed of the first ground of defendant's motion.

■■ The second ground of the motion —that the complaint does not show or allege the judicial appointment of a next friend for plaintiffs—is without merit. The court holds that judicial appointment of a next friend for the infant plaintiffs in this action is not necessary. Rule 17(c) of the Federal Rules of Civil Procedure, 28 U.S.

C.A., provides: "If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem." In 6 Cyclopedia of Federal Procedure, § 2116, page 175, it is stated:

"A next friend is one who, without being regularly appointed guardian, represents an infant plaintiff. * * *

"It is not usual, unless a statute requires it, that a next friend should be appointed by the court, but the next friend of his own initiative commences the action and is under the supervision of the court."

See also 3 Moore's Federal Practice, 2d Ed., § 17.26, pages 1417–1422.

■ The third ground of defendant's motion to dismiss presents the more difficult question—whether or not the infant plaintiffs have a right of action for damages against defendant, who they allege enticed and induced their mother to leave and desert them and their family home. In considering this motion the court must assume the truth of all material and well-pleaded allegations of fact.

It is admitted that the right of action asserted by the plaintiffs in the present case has not been recognized at common law in Michigan. Indeed, it appears that such a right of action was not fully recognized by an American court until the decision in 1945 in Daily v. Parker, 7 Cir., 152 F.2d 174, 162 A.L.R. 819. That decision has been followed in Johnson v. Luhman, 330 Ill.App. 598, 71 N.E.2d 810, decided in 1947, and in Miller v. Monsen, Minn., 37 N.W. 2d 543, decided May 6, 1949. The able and well-reasoned opinions in these three cases definitely uphold the right of a minor child to maintain an action for damages against a person who has wrongfully enticed and induced a parent to desert the child and the family home.

■ As neither the legislature nor the Supreme Court of Michigan has spoken on the question here presented, it becomes the duty of this court to decide the question. When confronted with the same problem, Judge Evans in Daily v. Parker said, 152 F.2d at page 177: "Our conclusion * * * is that a child today has a right enforceable

in a court of law, against one who has invaded and taken from said child the support and maintenance of its father, as well as damages for the destruction of other rights which arise out of the family relationship and which have been destroyed or defeated by a wrongdoing third party. Likewise, we are persuaded that because such rights have not heretofore been recognized, is not a conclusive reason for denying them. They will be denied if it appears that the state court has spoken and denied them. If said rights have not been denied in the state court, we see no reason why the Federal Courts should be more prone to deny them or to grant them than a state court. If the state courts have not acted, we are free to take the course which sound judgment demands. In the absence of a state court ruling our duty is tolerably clear. It is to decide, not avoid, the question."

■■ The early common law of family relations was dominated by the Roman doctrine of pater familias, under which the father was lord and master of the home. Under this doctrine the father spoke for the family, and the rights of all its members were merged in him. However, through the centuries the concept of the family has slowly changed, and today it is recognized as a cooperative enterprise with mutual rights and obligations among all its members. Although the father may play the role of major breadwinner, both mother and children, within the limits of their abilities, often make contributions to the family income. Each is entitled to the financial aid and to the society and companionship of the others and to all the benefits that result from a united and cooperative family home life. The wife is no longer the chattel of her husband but his active partner. Likewise, the children have emerged from the role of subservient charges to that of responsible individuals. They are entitled to the tangible incidents of family life, such as food, clothing, and shelter, and also to the intangible, although equally important, elements of affection, companionship, moral support, and guidance from both the father and mother. The family relationship is today undoubtedly the most important relationship among civilized people; it is the relationship upon which all society must depend for endurance, permanence, and well-being. In Daily v. Parker the court said, 152 F.2d at page 177:

"On this subject of the family and the rights and obligations of its members there has been a change in the accepted view of the status of the wife and the children. The courts have been rather slow to follow this accepted change. But they have belatedly accepted it and when once they accepted the change they have made law by their decisions.

"In announcing this law, they have applied recognized principles to new or newly accepted views of the political and social conditions revolving about the family and the status of each member thereof."

■ Viewed with this concept of the present status of the family relationship, the question here presented is whether or not the infant plaintiffs have a right of action for damages against a person who wrongfully induced their mother to desert them and their home, thereby destroying the family relationship and their rights arising therefrom. This court is convinced that the answer must be in the affirmative. In Miller v. Monsen, supra, in holding that a minor has a right of action for damages against one enticing its parent from the family home, the court said [37 N.W.2d 545]:

"We hold, in accordance with what we deem to be the better-considered authorities, that a child has legally protected rights in the maintenance of the family relationship against interference by outsiders, and that enticement by an outsider of the parent from the family home constitutes an invasion of the child's rights, for which it may maintain an action for damages. Daily v. Parker, 7 Cir., 152 F.2d 174, 162 A.L.R. 819 (father); Johnson v. Luhman, 330 Ill.App. 598, 71 N.E.2d 810 (father). There can be no doubt that benefits of the greatest value flow to the child from its mother's love, society, care, and services, which may be a major factor in the welfare of the child during its entire life, and

that, because the child's character, disposition, and abilities have a corresponding impact upon society, it is of the highest importance to the child and society that its right to receive the benefits derived from its mother be protected. Such a right has pecuniary value capable of measurement. In cases for the mother's wrongful death, where only the pecuniary value of the mother's life is awarded to the child, and in cases under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., where the pecuniary value to the child of a deceased father's life is to be measured separately from that of the mother, it is held that services rendered to a child by a mother fit to render them, such as nurture and training—physical, intellectual, and moral—have pecuniary value capable of measurement, and that, when such services and care are not rendered by the mother, they must be obtained from others and paid for. Michigan Cent. R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192. 57 L.Ed. 417, Ann.Cas.1914C, 176; Tilley v. Hudson River R. Co., 24 N.Y. 471, 23 How.Prac. 363; Id., 29 N.Y. 252, 86 Am.Dec. 297. And as said in the Tilley case, 24 N.Y. 476, 23 How.Prac. 370, while it is the father's duty to provide for his children, this is no adequate reason for holding that the children should not be entitled to recover for the damage occasioned by the loss of their mother, for the reason that such loss is a separate one—'The children have been deprived of that which they were entitled to receive [the nurture and care of their mother], by the wrongful act of the defendants.' * * *

"The early common-law concept that totality of family rights was vested in the husband by reason of such doctrines as those of marital unity of husband and wife and family unity of parent and child has been swept away by modern legislation such as married women's acts preserving to women after marriage their separate existence and individual rights, including that of right to sue in their own names, and by social change which has entirely altered the status, rights, and duties of members of the family not only inter se but also as against the world. Many rights formerly vested in the husband are now vested in other members of the family. We cannot refuse to recognize such changes without ignoring the obvious. * * *

"The logical consequence of such change is that now children, the same as parents, have rights as well as duties. It is now recognized that a child has as against outsiders a legally protected interest in the maintenance of the family relationship. * * *

"It seems reasonable to allow a child to recover for the enticement of its parent the loss of benefits flowing to it as a consequence of the parent-child relationship the same as a former employe has a right to recover for loss of expected reemployment by his former employer caused by wrongful interference by another; as a tradesman has to recover for loss of expected patronage caused by wrongful interference by another; and as a person has a right to recover for loss of benefits expected to result from social intercourse with others. The child's damages are as certain and direct as those in the cases mentioned, including those for wrongful death cited above. The basis for recovery in the cases mentioned above is that defendant's wrongful interference with plaintiff's relationship with another has caused him loss of benefits flowing from the relationship. A child sustains similar loss by enticement of its mother from their home. Enticement of a mother is a grievous, outrageous, and tragic wrong to her child. The child should have a right to recover in such cases, and we so hold."

See also Daily v. Parker, supra; Johnson v. Luhman, supra.

▆▆▆ The novelty of an asserted right and the lack of common-law precedent therefor are not valid reasons for denying its existence. The genius of the common law is its flexibility and capacity for growth and adaptation. It has always been recognized that the common law is not a rigid, inflexible, static thing, but is a living organism, ever growing and expanding to meet the problems and needs of changing social and economic conditions. The common law is not a primer of

rigid and absolute rules, but rather a body of broad and comprehensive principles created by judicial decisions and based on justice, reason, and common sense. Its principles have been determined by the needs of society and are ever susceptible to adaptation to new conditions, relations, and usages, as the progress of civilization may require. Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136; Daily v. Parker, supra; Miller v. Monsen, supra; Johnson v. Luhman, supra; Bugbee v. Fowle, 277 Mich. 485, 269 N.W. 570; Rozell v. Rozell, 281 N.Y. 106, 22 N.E.2d 254, 123 A.L.R. 1015; Dean Pound's "The Spirit of the Common Law," page 183.

The present action by the infant plaintiffs proceeds on the hypothesis of a mutually united and cooperative relationship between the mother, father, and children, which existed until destroyed by the defendant's malicious intrusion. It is elementary that if a wrong has been committed, there should be a remedy. This court has no hesitancy in holding that the rights of the plaintiffs should not be denied merely because the right of action asserted by them has not been recognized in Michigan either by rule of decision or by statute. The common law is sufficiently broad and comprehensive to afford redress to the plaintiffs in the present case.

Defendant's contention that this action by the infant plaintiffs is barred by the so-called "heart-balm statute" of Michigan, supra, is without merit. That statute provides:

"Sec. 1. All civil causes of action for alienation of affections, criminal conversation, and seduction of any person of the age of 18 years or more, and all causes of action for breach of contract to marry are hereby abolished. Comp.Laws 1948, § 551.301.

"Sec. 2. It shall be unlawful for any person, either as litigant or attorney, to file, cause to be filed, threaten to file, or threaten to cause to be filed, in any court in this state, any pleading or paper setting forth or seeking to recover upon any civil cause of action based upon alienation of affections, criminal conversation, seduction of any person of the age of 18 years or more, or breach of contract to marry, whether such cause of action arose within or without this state: Provided, however, That the provisions of this act shall not apply to suits for alienation of the affections of a husband or wife against a defendant who is a parent, brother, sister or person in loco parentis of the plaintiff's spouse." Comp.Laws 1948, § 551.302.

This statute was held constitutional in Bean v. McFarland, 280 Mich. 19, 273 N.W. 332. However, it is elementary that a statute in derogation of common-law rights should be strictly construed. People v. Serra, 301 Mich. 124, 3 N.W.2d 35; People v. Powell, 280 Mich. 699, 274 N.W. 372, 111 A.L.R. 721; People v. Kramer, 225 Mich. 35, 195 N.W. 802; Lantis v. Reithmiller, 95 Mich. 45, 54 N.W. 713.

It may be noted that the proviso of the above statute refers to suits for alienation of the affections of a "plaintiff's spouse," and from that statement it may reasonably be inferred that the pertinent provisions of the statute likewise refer to suits by a spouse. This statute, insofar as here pertinent, was obviously intended to apply only to the traditional alienation-of-affections suit, which was based upon the right of one spouse to recover for the alienation of the affections of the other spouse and for the resulting loss of consortium, conjugal society, and assistance. That was the only type of alienation-of-affections action recognized in Michigan prior to the enactment of this statute and, therefore, was the only action which it was intended to abolish. The statute would undoubtedly bar an action by the husband, Theodore Russick, for the alienation of his wife's affections, but it does not bar the present suit by the children. Theirs is not the traditional alienation-of-affections suit—it is an action to recover damages for a direct wrong to the infant plaintiffs, that is, the wrongful invasion of their family relationships and the loss of the benefits therefrom. To hold with defendant's contention that the statute

abolished the right of action asserted by the plaintiffs, is to say in effect that the legislature sought to abolish a right of action which at that time was neither known nor recognized under Michigan law. The court is convinced that the above statute did not abolish, and does not bar, the right of action asserted by the plaintiffs in the present case. Their right of action arose when defendant enticed and induced their mother to desert them and the family home, and the subsequent divorce of the parents did not affect this right.'

In support of his contention that the complaint fails to state a claim upon which relief can be granted, defendant cites McMillan v. Taylor, 81 U.S.App.D. C. 322, 160 F.2d 221; Rudley v. Tobias, 84 Cal.App.2d 454, 190 P.2d 984; Taylor v. Keefe, 134 Conn. 156, 56 A.2d 768; Morrow v. Yannantuono, 152 Misc. 134, 273 N.Y.S. 912; Garza v. Garza, Tex.Civ. App., 209 S.W.2d 1012. The court has carefully examined these decisions but is not impressed with their reasoning and conclusions. In accordance with what it deems to be the better-considered and reasoned authorities, the court holds that a minor child has rights in the maintenance of the family relationship which the law will protect against interference and invasion by outsiders, and that a person who entices and induces a parent to leave and desert the family home invades the child's legal rights, for which it may maintain an action for damages.

Assuming the truth of plaintiffs' allegations in the present case, the court concludes that the complaint states a cause of action for damages against the defendant. The question of the amount of damages, if any, to which the plaintiffs may be entitled can be determined only upon a trial on the merits. Daily v. Parker, supra; Johnson v. Luhman, supra; Miller v. Monsen, supra.

For the reasons herein stated, defendant's motion to dismiss is denied, and an order will be entered accordingly. Defendant is allowed 20 days within which to file answer.